JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

CHERYL ANN LUKE, Va. Bar Number: 26331
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-5466
Fax: (202) 616-2427
Email: cheryl.luke@usdoj.gov

Attorneys for Plaintiff United States of America

KAMALA D. HARRIS
Attorney General of California
SARAH E. MORRISON, State Bar No. 143459
Supervising Deputy Attorney General
OLIVIA W. KARLIN, State Bar No. 150432
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 897-0473
Fax: (213) 897-2802
E-Mail: olivia.karlin@doj.ca.gov

Attorneys for Plaintiff State of California
Department of Toxic Substances Control

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, DEPARTMENT OF TOXIC SUBSTANCES CONTROL, | ) ) ) ) ) ) | CIV. NO.: COMPLAINT |

| | |
|---|---|
| 1 | Plaintiffs, ) |
| 2 | v. ) |
| | ) |
| 3 | AC Products, Inc.; ) |
| | A. G. Layne, Inc.; ) |
| 4 | Alpha Corporation of Tennessee Inc.; ) |
| 5 | Ashland Inc.; ) |
| | Atlantic Richfield Company; ) |
| 6 | Baker Petrolite LLC; ) |
| 7 | Cargill, Incorporated; ) |
| | Castrol Industrial North America Inc.; ) |
| 8 | Chemcentral Corp.; ) |
| | Chemical Waste Management, Inc.; ) |
| 9 | Chevron U.S.A. Inc.; ) |
| 10 | Coral Chemical Company; ) |
| | D.A. Stuart Company; ) |
| 11 | Dunn-Edwards Corporation; ) |
| 12 | Engineered Polymer Solutions, Inc.; ) |
| | ExxonMobil Oil Corporation; ) |
| 13 | Gallade Chemical, Inc.; ) |
| 14 | Hasco Oil Company, Inc.; ) |
| | Houghton International, Inc.; ) |
| 15 | J.H. Mitchell & Sons Distributors, Inc.; ) |
| 16 | Lockheed-Martin Corporation; ) |
| | Lonza Inc.; ) |
| 17 | Lubricating Specialties Company; ) |
| | Mathisen Oil Co., Inc.; ) |
| 18 | Pennzoil-Quaker State Company; ) |
| 19 | Penreco ) |
| | PolyOne Corporation; ) |
| 20 | PPG Industries, Inc.; ) |
| | PTM&W Industries Inc.; ) |
| 21 | Quaker Chemical Corporation; ) |
| 22 | Rathon Corp.; ) |
| | Shell Chemical LP; ) |
| 23 | Shell Oil Company; ) |
| | SOCO West, Inc.; ) |
| 24 | Southern California Edison; ) |
| 25 | Southern Counties Oil Co.; ) |
| 26 | |

1  Sta-Lube LLC f/k/a Sta-Lube, Inc.;                    )
   Stuarts' Petroleum;                                   )
2  Texaco Downstream Properties Inc.;                    )
   The Boeing Company;                                   )
3  The Valspar Corporation;                              )
   Union Oil Company of California; and                  )
4  Univar USA Inc.,                                      )
5                                                        )
                                                         )
6     Defendants.                                        )
7  _____            )

8        The United States of America, by authority of the Attorney General of the

9  United States and through the undersigned attorneys, acting at the request of the

10 Administrator of the United States Environmental Protection Agency ("EPA"), and

11 the State of California Department of Toxic Substances Control ("DTSC")

12 (collectively referred to as "Plaintiffs") allege as follows:

13

14                      **STATEMENT OF THE ACTION**

15      1.      This is a civil action by the United States of America for injunctive

16 relief and recovery of costs under sections 106(a) and 107 of the Comprehensive

17 Environmental Response, Compensation, and Liability Act ("CERCLA"),

18 42 U.S.C. §§ 9606(a) and 9607.

19

20      2.      This is also a civil action by DTSC for recovery of costs under

21 section 107 of CERCLA, 42 U.S.C. § 9607.

22

23      3.      Plaintiffs have incurred response costs and expect to continue to

24 incur response costs in connection with actions taken in response to releases and/or

25 threatened releases of hazardous substances at and/or from the Cooper Drum

26

Company Superfund Site located in Los Angeles County, California (the "Site").

4.     Plaintiffs also make a claim under Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), for a declaratory judgment that each of the Defendants is jointly and severally liable to Plaintiffs for future response costs incurred by Plaintiffs in responding to releases and/or threatened releases of hazardous substances at and/or from the Site.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action, and the parties to this action, pursuant to sections 106(a), 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9606(a), 9607(a) and 9613(b), and under 28 U.S.C. §§ 1331 and 1345.

6.     Venue is proper in this district under sections 106(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9606(a) and 9613(b), and 28 U.S.C. § 1391(b), because the claims arose, and/or the threatened and actual releases of hazardous substances occurred, within this judicial district.

## PLAINTIFFS

7.     Plaintiff, the United States of America, is acting at the request of the EPA, an agency of the United States.

8.     Plaintiff, the State of California Department of Toxic Substances Control (DTSC) is a public agency of the State of California organized and

existing under and pursuant to sections 58000-58018 of the California Health and

Safety Code.  DTSC is the state agency responsible under state law for determining

whether there has been a release and/or threatened release of a hazardous substance

into the environment, and for determining the actions to be taken in response

thereto.

## DEFENDANTS

9.       Defendants AC Products, Inc.; A. G. Layne, Inc.; Alpha

Corporation of Tennessee Inc.; Ashland Inc.; Atlantic Richfield Company; Baker

Petrolite LLC; Cargill, Incorporated; Castrol Industrial North America Inc.;

Chemcentral Corp.; Chemical Waste Management, Inc.; Chevron U.S.A. Inc.; Coral

Chemical Company; D.A. Stuart Company; Dunn-Edwards Corporation;

Engineered Polymer Solutions, Inc.; ExxonMobil Oil Corporation; Gallade

Chemical, Inc.; Hasco Oil Company, Inc.; Houghton International, Inc.; J.H.

Mitchell & Sons Distributors, Inc.; Lockheed-Martin Corporation; Lonza Inc.;

Lubricating Specialties Company; Mathisen Oil Co., Inc.; Pennzoil-Quaker State

Company; Penreco; PolyOne Corporation; PPG Industries, Inc.; PTM&W

Industries Inc.; Quaker Chemical Corporation; Rathon Corp.; Shell Chemical LP;

Shell Oil Company; SOCO West, Inc.; Southern California Edison; Southern

Counties Oil Co.; Sta-Lube LLC f/k/a Sta-Lube, Inc.; Stuarts' Petroleum; Texaco

Downstream Properties Inc.; The Boeing Company; The Valspar Corporation;

Union Oil Company of California; and Univar USA Inc. (collectively, "Defendants") are "persons" within the meaning of section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## GENERAL ALLEGATIONS

10.     The Site is approximately 2.4 acres in size and is located in South Gate, a mixed commercial, industrial, residential area about ten miles southeast of downtown Los Angeles.  The Site is bordered by Atlantic Avenue to the west, Rayo Avenue to the east, and the former Tweedy Elementary School to the south. The Site was the location of the Cooper Drum Company, which operated a drum reconditioning business from 1974 to approximately 1993.

11.     Each Defendant had an ongoing business relationship with the Cooper Drum Company during the time of its drum reconditioning operations at the Site.

12.     During the time of Cooper Drum Company's drum reconditioning operations at the Site, the business of each Defendant involved the use, storage and/or processing of hazardous substances and/or solid wastes.  The Cooper Drum Company either picked up or accepted from each Defendant used 55-gallon drums that contained residues of hazardous substances and/or solid wastes.  As a result of the acts of the Defendants at the Site, hazardous substances have been and continue to be released and/or threatened to be released into the soil at and/or from the Site.

13.     The drum reconditioning process at the Site consisted of flushing and stripping the drums, repainting where necessary, and returning the drums to their owners for reuse.  Residual wastes flushed from the drums and wastes from the reconditioning process were collected in open concrete pits and trenches, resulting in contamination of the soils and groundwater beneath the Site.

14.     During the time of Cooper Drum Company's drum reconditioning operations at the Site, caustic fluids leaked from the on-Site trenches onto the property of the Tweedy Elementary School, contaminating the soils.  The Tweedy Elementary School was closed in 1988 due to the concern that children could be exposed to contamination.

15.     In 1989, the Los Angeles Department of Health Services ("LADHS") collected soil samples at the Site and found hazardous substances in the soils, including volatile organic compounds ("VOCs"), petroleum byproducts and polychlorinated biphenyls ("PCBs").

16.     The Cooper Drum Company, under the direction of the LADHS, removed contaminated soils from its property and from the property of the former Tweedy Elementary School.  Four monitoring wells were placed in the Gaspur Aquifer, the uppermost aquifer beneath the Site, and VOCs were detected in the Gaspur Aquifer.

//

17.     From 1996 to 2002, EPA conducted a Remedial Investigation and Feasibility Study ("RI/FS") for the Site.  In the RI/FS, EPA concluded that substantial portions of the soil and groundwater beneath the Site have been contaminated by VOCs, mainly chlorinated solvents such as trichloroethene ("TCE"), tetrachloroethene ("PCE"), and isomers of dichloroethene ("DCE") and dichloroethane ("DCA").  Other contaminants of concern are 1,4-dioxane in groundwater and polyaromatic hydrocarbons ("PAHs"), PCBs, and lead in the soil.

18.     TCE, PCE, isomers of DCE and DCA; 1,4-dioxane, PAHs, PCBs, and lead are among the Site-related chemicals used at the Defendants' facilities and transported to the Site in the course of the Defendants' business dealings with the Cooper Drum Company.

19.     TCE, PCE, isomers of DCE and DCA; 1,4-dioxane, PAHs, PCBs, and lead are hazardous substances as defined in section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and 40 C.F.R. § 302.4, App. A.

20.     The resulting groundwater contamination has generally migrated from the Site in a southerly direction through the Gaspur Aquifer.  The groundwater in the Gaspur Aquifer is designated as a potential drinking water source in the Los Angeles Regional Water Quality Control Board's Water Quality Control Plan.  Several deeper groundwater aquifers contiguous to and beneath the Site are currently used for domestic purposes, including drinking water, and are

presently endangered by Site contaminants migrating laterally and vertically from the shallow aquifer towards and into the deeper aquifers.

21.     Pursuant to section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, in June 2001.  66 Fed. Reg. 32,235 (June 14, 2001).

22.     Pursuant to section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the RI/FS and of EPA's proposed plan for remedial action on June 11, 2002, in the *Long Beach Press-Telegram*, and held a public meeting on the RI/FS and proposed plan on June 27, 2002.  EPA executed the Record of Decision for the Site on September 27, 2002 ("ROD").

23.     The remedial action called for in the ROD addresses contaminated soil and groundwater.  Dual phase extraction was selected for treatment of VOCs in soil and perched groundwater. The ROD provides for excavation and off-Site disposal of other non-VOC contaminants in soils, including semi-volatile organic compounds, PCBs and lead, or, where excavation is not feasible, the imposition of institutional controls to prevent exposure.  The ROD prescribes extraction and treatment of groundwater for containment and remediation.  Chemical in situ treatment is also prescribed to enhance the treatment of VOCs in groundwater and to reduce the potential for other VOC plumes in the vicinity to impact the Site.

//

24.     The ROD is consistent with CERCLA and the National Contingency Plan, 40 C.F.R. Part 300.

25.     TCE, PCE, isomers of DCE and DCA; 1,4-dioxane, PAHs, PCBs, and lead each have come to be located at the Site.

26.     There were and are "releases" and threatened "releases" of hazardous substances from the Site within the meaning of section 101(22) of CERCLA, 42 U.S.C. § 9601(22), into the environment at and from the Site, and the Site poses numerous threats to human health and the environment.

27.     The Site is a "facility" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9) and a "site" within the meaning of Health and Safety Code Section 25323.9.

28.     Plaintiffs have incurred costs for "response" as that term is defined in section 101(25) of CERCLA, 42 U.S.C. § 9601(25), and Health and Safety Code section 25323.3, in taking actions related to the release and/or threatened release of hazardous substances at, around, and/or beneath the Site.  The Plaintiffs' response actions include, but are not limited to, the following activities: investigation; removal/remediation actions; enforcement/cost recovery; oversight; public participation; production of written reports and decision documents.

//

//

## FIRST CLAIM FOR RELIEF

29.     Paragraphs 1-28 are realleged and incorporated herein by reference.

30.     Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> In addition to any other action taken by a State or local government,
> when the President determines that there may be an imminent and
> substantial endangerment to the public health or welfare or the
> environment because of an actual or threatened release of a hazardous
> substance from a facility, he may require the Attorney General of the
> United States to secure such relief as may be necessary to abate such
> danger or threat, and the district court of the United States in the district
> in which the threat occurs shall have jurisdiction to grant such relief as
> the public interest and the equities of the case may require.

31.     By Executive Order 12580 of January 23, 1987, the President's functions under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), were delegated to the Administrator of EPA.

32.     EPA has determined that there is or may be an imminent and substantial endangerment to the public health or welfare or the environment because of the release and threatened releases of hazardous substances from the Site.

11

33.      Pursuant to section 106 of CERCLA, 42 U.S.C. § 9606, Defendants each are jointly and severally liable for the injunctive relief to perform the remedial alternatives selected by the United States for the Site.

## SECOND CLAIM FOR RELIEF

34.      Paragraphs 1-28 are realleged and incorporated herein by reference.

35.      Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides, in pertinent part:

(1) the owner or operator of a vessel or a facility, [and]

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, [and]

(3)     any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances, and

(4)  any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities . . . selected

by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for --

     (A)  all costs of removal or remedial action incurred by the United States Government or a State . . . not inconsistent with the national contingency plan . . .

36.     Each Defendant is a person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any party or entity, at the Site within the meaning of section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

37.     Plaintiffs have incurred and will continue to incur costs of removal and remedial actions not inconsistent with the National Contingency Plan to respond to the release or threatened release of hazardous substances at and from the Site, within the meaning of sections 101(23), (24) and (25) of CERCLA, 42 U.S.C. §§ 9601(23), (24) and (25).

38.     Defendants are jointly and severally liable to Plaintiffs for all response costs, including the costs of removal and remedial actions incurred in the past by Plaintiffs with respect to the Site, plus interest on the response costs, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

39.     Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides in pertinent part that in any action for recovery of costs, "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

40.     Pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiffs are entitled to a declaratory judgment that Defendants are jointly and severally liable for further response costs incurred by Plaintiffs in connection with the Site in any subsequent action or actions by Plaintiffs to recover such costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, respectfully request that the Court:

1.     Order Defendants jointly and severally, to perform the remedial alternatives selected by the United States for the Site;

2.     Enter judgment against Defendants, jointly and severally, for all response costs incurred by the United States in connection with the Site, plus interest;

3.     Enter judgment against Defendants, jointly and severally, for all response costs incurred by DTSC in connection with the Site;

4.     Award pre-judgment interest on the above sums, as provided by

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a);

5.     Enter declaratory judgment against Defendants, jointly and severally,

for all future costs to be incurred by Plaintiffs in connection with the Site; and

6.     Grant such other relief as this Court deems just and proper.

Respectfully Submitted,

FOR THE UNITED STATES OF AMERICA

 /s/ Cheryl A. Luke
**CHERYL A. LUKE**
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

FOR THE STATE OF CALIFORNIA
DEPARTMENT OF TOXIC SUBSTANCES
CONTROL

/s/ Olivia W. Karlin
**OLIVIA W. KARLIN**
 Deputy Attorney General
 Attorney for the State of California
 Department of Toxic Substances Control