JS-6

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

CHERYL ANN LUKE, Va. Bar Number: 26331
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:  (202) 514-5466
Fax: (202) 616-2427
Email:  cheryl.luke@usdoj.gov

Attorneys for Plaintiff United States of America

(See additional parties on next page)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, <br><br> Plaintiffs, <br><br> v. <br><br> AC PRODUCTS, INC., et al. <br><br> Defendants. | CIV. NO.: 2:15-cv-09931 AB(FFMx) <br><br><br> CONSENT DECREE |

1

KAMALA D. HARRIS
Attorney General of California

SARAH E. MORRISON, State Bar No. 143459
Supervising Deputy Attorney General

OLIVIA W. KARLIN, State Bar No. 150432
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
Telephone: (213) 897-0473
Fax: (213) 897-2802
E-Mail: olivia.karlin@doj.ca.gov

Attorneys for Plaintiff State of California Department of Toxic Substances Control

**TABLE OF CONTENTS**

I. BACKGROUND ...................................................................................5

II. JURISDICTION ................................................................................8

III. PARTIES BOUND .........................................................................8

IV. DEFINITIONS ................................................................................9

V. GENERAL PROVISIONS ............................................................15

VI. PERFORMANCE OF THE WORK BY PERFORMING SETTLING
      DEFENDANTS ...........................................................................18

VII. REMEDY REVIEW .....................................................................29

VIII. QUALITY ASSURANCE, SAMPLING AND DATA ANALYSIS............31

IX. ACCESS AND INSTITUTIONAL CONTROLS ........................33

X. REPORTING REQUIREMENTS ................................................36

XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS .....................39

XII. PROJECT COORDINATORS .....................................................40

XIII. PERFORMANCE GUARANTEE.............................................42

XIV. CERTIFICATE OF COMPLETION ........................................50

XV. EMERGENCY RESPONSE .......................................................53

XVI. PAYMENTS FOR RESPONSE COSTS ...................................54

XVII. INDEMNIFICATION AND INSURANCE .............................61

XVIII. FORCE MAJEURE ...................................................................64

XIX. DISPUTE RESOLUTION .........................................................66

XX. STIPULATED PENALTIES .......................................................70

XXI. COVENANTS BY PLAINTIFFS ..............................................75

XXII. COVENANTS BY SETTLING DEFENDANTS .....................81

XXIII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION ............84

XXIV. ACCESS TO INFORMATION .................................................86

XXV. RETENTION OF RECORDS....................................................87

XXVI. NOTICES AND SUBMISSIONS .................................................89

XXVII. RETENTION OF JURISDICTION ...........................................92

XXVIII. APPENDICES ...........................................................................92

XXIX. COMMUNITY INVOLVEMENT ..............................................93

XXX. MODIFICATION............................................................................93

XXXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ..............94

XXXII. SIGNATORIES/SERVICE ........................................................94

XXXIII. TERMINATION OF ORDER ...................................................95

XXXIV. FINAL JUDGMENT ..................................................................95

# I.   **BACKGROUND**

A.      The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), and the State of California Department of Toxic Substances Control ("DTSC") (collectively "Plaintiffs") filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607 ("Complaint").

B.      The Plaintiffs' Complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") and by DTSC for response actions at the Cooper Drum Company Superfund Site ("Site") in South Gate, Los Angeles County, California, together with accrued interest; and (2) performance of response actions by defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.      In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the DTSC in July 2010 of negotiations with potentially responsible parties regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided DTSC with an opportunity to participate in such negotiations and to be a party to the Complaint and to this Consent Decree.

D.      DTSC thereafter joined the United States' Complaint alleging that the defendants are liable to the State of California Department of Toxic Substances Control under Section 107 of CERCLA, 42 U.S.C. §9607, and Health and Safety Code Sections 25358.3 and 25360.

E.      The defendants who have entered into this Consent Decree ("Settling Defendants") do not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the Complaint, nor do they acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an

imminent and substantial endangerment to public health or welfare or the environment.

F.      Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register in June 2001, 49 Fed. Reg. 40,320.

G.      In response to a release or substantial threat of a release of hazardous substances at or from the Site, EPA undertook a Remedial Investigation and Feasibility Study ("RI/FS") for the Site from 1996 to 2001 pursuant to 40 C.F.R. § 300.430.

H.      EPA completed a Remedial Investigation and Feasibility Study Report on May 15, 2002.

I.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the RI/FS and of the proposed plan for remedial action in June 2002, in a major local newspaper of general circulation.  EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action.  A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator, EPA Region IX, based the selection of the response action.

J.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 27, 2002, on which DTSC had a reasonable opportunity to review and comment.  Both the Remedial Investigation Feasibility Study (URS, May 2002) and the ROD acknowledge that groundwater at the Site has been impacted by upgradient off-site releases of chemicals of concern ("COCs") that are unrelated to the Site or historical Site activities. Additionally, EPA added two adjacent sites to the National Priorities List.  The ROD includes a responsiveness summary to the public comments.  Notice of the final plan was published in accordance with

Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).  The ROD is attached as Appendix A.

K.     On September 21, 2007, EPA completed two Remedial Design Reports containing the Remedial Designs for the Remedial Action for soils and groundwater at the Site.

L.     On February 11, 2009, EPA issued Unilateral Administrative Order 2009-07 (the "Order") to 43 recipients requiring the recipients to conduct the Remedial Action at the Site pursuant to the ROD and the Remedial Designs.  In compliance with the Order, certain of the recipients formed the Cooper Drum Cooperating Parties Group (the "Group") and, since 2009, the Group has been performing work pursuant to the Order.

M.     Based on the information presently available to EPA, EPA believes that the Work will be properly and promptly conducted by Performing Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

N.     Solely for purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Performing Settling Defendants shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

O.     The United States has reviewed the financial information submitted by the Ability-to-Pay Settling Defendants to determine whether the Ability-to-Pay Settling Defendants are financially able to pay response costs incurred and to be incurred at the Site.  Based upon this financial information, the United States has determined that the Ability-to-Pay Settling Defendants are able to pay the amounts required under this Consent Decree.

P.     The United States has reviewed available evidence relating to the volumes and toxicity of wastes at the Site attributable to the known potentially responsible

parties and has determined that the De Minimis Settling Defendants meet the criteria of Section 122(g)(1)(A) of CERCLA, 42 U.S.C. § 9622(g)(1)(A).

Q.      The Parties recognize, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.     **JURISDICTION**

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has personal jurisdiction over Settling Defendants.  Solely for the purposes of this Consent Decree and the underlying Complaint, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District.  Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.    **PARTIES BOUND**

2.      This Consent Decree applies to and is binding upon the United States and DTSC and upon Settling Defendants and their heirs, successors and assigns.  Any change in ownership or corporate status of a Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

3.      Performing Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing Performing Settling Defendants with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree.  Performing Settling Defendants or their contractors shall provide

written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Performing Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work in accordance with the terms of this Consent Decree.  With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with Performing Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.   **DEFINITIONS**

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply solely for purposes of this Consent Decree:

a.      "Ability-to-Pay Settling Defendants" shall mean those Settling Defendants identified in Appendix F as Ability-to-Pay Settling Defendants.

b.      "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

c.      "Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XXVIII).  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

d.      "Consent Decree ROD Amendment" shall mean an amendment to the ROD pursuant to Paragraph 11(c)(i)(A)(1)or(2) that changes the OU1 Phase 2 remedial action either to Monitored Natural Attenuation or to the alternative Remedial Action recommended by

Performing Settling Defendants  after conclusion of the Focused Feasibility Study and selected by EPA.

e.      "Contributing Settling Defendants" shall mean those Settling Defendants identified in Appendix H as Contributing Settling Defendants.

f.      "Day" shall mean a calendar day unless expressly stated to be a working day.  The term "working day" shall mean a day other than a Saturday, Sunday, or federal or state holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or state holiday, the period shall run until the close of business of the next working day.

g.      "De Minimis Settling Defendants" shall mean those Settling Defendants identified in Appendix G as De Minimis Settling Defendants.

h.      "DOJ" shall mean the United States Department of Justice and its successor departments, agencies or instrumentalities.

i.      "DTSC" shall mean the State of California Department of Toxic Substances Control, its officers, employees and representatives, all of its divisions and branches, and any predecessor or successor agency in interest, including the California Toxic Substances Control Account to the extent that funds from that account, or predecessors to that account, have been, or will be, expended on behalf of DTSC.  The Toxic Substances Control Account is successor in interest to the following accounts:  The California Hazardous Substances Account; The California Hazardous Waste Control Account; and The California Site Remediation Account.

j.      "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court as recorded on the Court docket, or, if the Court instead issues an order approving the Consent Decree, the date such order is recorded on the Court docket.

k.      "EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies or instrumentalities.

l.      "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

m.      "EPA Remedial Design" shall mean those activities previously undertaken by EPA and completed on September 21, 2007, to develop the design, plans and specifications for the Remedial Action for the Site.

n.      "EPA Remedial Design Reports" shall mean the reports containing the Remedial Designs for soils and groundwater at the Site completed by EPA in September 2007 and attached hereto as Appendix D.

o.      "Future Response Costs" shall mean all costs incurred after the Effective Date, including, but not limited to, direct and indirect costs that the Plaintiffs incur in reviewing or developing plans, reports, and other deliverables submitted pursuant to this Consent Decree, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, and laboratory costs.  Future Response Costs include the costs incurred pursuant to Section VII (Remedy Review), and Section IX (Access and Institutional Controls), including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure, implement, monitor, maintain, or enforce Institutional Controls (including, but not limited to, the amount of just compensation), Section XV (Emergency Response), Paragraph 47 (Funding for Work Takeover), and Section XXIX (Community Involvement).

p.      "Gaspur" or "Gaspur aquifer" shall mean the aquifer immediately beneath the Bellflower aquiclude and extending vertically to a depth of approximately 115 ft bgs.

11

q.      "Group" shall mean the Cooper Drum Cooperating Parties Group.

r.      "Institutional Controls" or "ICs" shall mean proprietary controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that:  (a) limit land, water, and/or resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water and/or resource use to ensure non-interference with or ensure the protectiveness of the Remedial Action; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

s.      "Interest" for EPA shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.  Interest for DTSC shall mean the interest at the rate specified in California Health and Safety Code § 25360.1.

t.      "Interim Response Costs" shall mean all costs as defined in Paragraph 4.o. ("Future Response Costs"), above, incurred by the United States between April 1, 2011, and the Effective Date or incurred by DTSC between December 21, 2012, and the Effective Date.

u.      "National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

v.      "Operation and Maintenance" or "O&M" shall mean all activities required to maintain the effectiveness of the Remedial Action as

required under the Operation and Maintenance Plan approved by EPA pursuant to Section VI (Performance of the Work by Performing Settling Defendants) and the Statement of Work ("SOW").

w. "Order" shall mean the Unilateral Administrative Order 2009-07 issued by EPA on February 11, 2009.

x. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

y. "Parties" shall mean the United States, DTSC and Settling Defendants.

z. "Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurred at or in connection with the Site through March 31, 2011, and that DTSC incurred at or in connection with the Site through December 20, 2012, plus Interest on such costs that accrued pursuant to 42 U.S.C. § 9607(a) through such date.

aa. "Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action set forth in the ROD, Consent Decree ROD Amendment(s), and the SOW and any modified standards established pursuant to this Consent Decree.

bb. "Performing Settling Defendants" or "PSDs" are those Settling Defendants identified in Appendix I as Performing Settling Defendants.

cc. "Plaintiffs" shall mean the United States and DTSC.

dd. "RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

ee. "Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Site signed on September 27, 2002, by the Regional Administrator, EPA Region IX, or his delegate, and all attachments thereto. The ROD is attached as Appendix A.

13

ff.     "ROD Amendment" shall mean an amendment to the ROD that fundamentally alters the basic features of a selected remedy in the ROD and is adopted pursuant to the provisions of 40 C.F.R § 300.435(c)(2)(ii)(A-H). The term "ROD Amendment" shall include the amended Statement of Work which implements the ROD Amendment.

gg.     "Remedial Action" shall mean all activities Performing Settling Defendants are required to perform under the Consent Decree to implement the ROD, in accordance with the SOW, the final approved remedial design submission, the approved Remedial Action Work Plan(s), and other plans approved by EPA, including implementation of Institutional Controls, to achieve the Performance Standards, and excluding the performance of the Remedial Designs, O&M, and the activities required under Section XXV (Retention of Records).

hh.     "Remedial Action Work Plan(s)" shall mean the document(s) developed pursuant to Paragraph 11 (Remedial Action) and the SOW and approved by EPA, and any modifications thereto.

ii.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

jj.     "Settling Defendants" shall mean the parties identified in Appendix E.

kk.     "Site" shall mean the Cooper Drum Company Superfund Site, Los Angeles County, California, depicted generally on the map attached as Appendix B and the areal extent of hazardous substances released at or from the Site. The Site does not include the aquifers underlying the Gaspur aquifer.

ll.      "Statement of Work or "SOW" shall mean the statement of work for implementation of the Supplemental Remedial Design, Remedial

Action and O&M at the Site, as set forth in Appendix C to this Consent Decree and any modifications made in accordance with this Consent Decree.

mm.   "Supervising Contractor" shall mean the principal contractor retained by Performing Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

nn.   "Supplemental Remedial Design" shall mean such modifications, additions or changes to the EPA Remedial Designs to be incorporated into the Remedial Action Work Plans developed pursuant to Paragraph 11 (Remedial Action), as described in the SOW, to be undertaken and completed by Performing Settling Defendants.

oo.   "United States" shall mean the United States of America and each department, agency and instrumentality of the United States, including EPA.

pp.   "Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. §9601(14); and (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C.§ 9601(33).

qq.   "Work" shall mean all activities and obligations Performing Settling Defendants are required to perform under this Consent Decree, except the activities required under Section XXV (Retention of Records).

## V.   GENERAL PROVISIONS

5.   Objectives of the Parties.  The objectives of the Parties in entering into this Consent Decree are to protect public health and welfare and the environment by the design and implementation of response actions at the Site by Performing Settling Defendants, to pay response costs of Plaintiffs, and to resolve the claims of Plaintiffs stated in the Complaint against Settling Defendants.

//      //

//      //

6.      Commitments by Settling Defendants.

a.      Performing Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth in this Consent Decree or developed by Performing Settling Defendants and approved by EPA, after reasonable opportunity for review and comment by DTSC, pursuant to this Consent Decree.  Performing Settling Defendants shall pay the United States and DTSC Past Response Costs, Interim Response Costs and Future Response Costs as provided in this Consent Decree.

b.      The obligations of Performing Settling Defendants to finance and perform the Work, including obligations to pay amounts due under this Consent Decree, are joint and several.  In the event of the insolvency of any Performing Settling Defendant or the failure of any Performing Settling Defendant to implement any requirement of this Consent Decree, the remaining Performing Settling Defendants shall complete all such requirements.

c.      Performing Settling Defendants' obligations under this Consent Decree shall be independent of and unaffected by any nonperformance by Contributing Settling Defendants, Ability-to-Pay Settling Defendants or De Minimis Settling Defendants and shall remain in full force and effect regardless of whether Contributing Settling Defendants, Ability-to-Pay Settling Defendants or De Minimis Settling Defendants have complied with their obligations under this Consent Decree.

d.      Contributing Settling Defendants shall make payments to Performing Settling Defendants in the amounts and at the times set out in Appendix H.  Evidence of payment of these required amounts by Contributing Settling Defendants shall be provided to EPA either by the

16

Performing Settling Defendants that have received such payment or by any escrow agent charged by any Contributing Settling Defendants to transfer such payments to Performing Settling Defendants.

e.     Ability-to-Pay Settling Defendants shall make payments to the United States in the amounts and at the times set out in Appendix F.

f.     Each De Minimis Settling Defendant shall make its payment to the United States in the amount and at the time set out for it in Appendix G.

7.     <u>Compliance With Applicable Law</u>.  All activities undertaken by Performing Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations.  Performing Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW.  The activities conducted pursuant to this Consent Decree, if approved by EPA or otherwise approved under the Decree provisions, shall be deemed to be consistent with the NCP.

8.     <u>Permits.</u>

a.     As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, 40 C.F.R. § 300.400(e), no permit shall be required for any portion of the Work conducted entirely on-Site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work).  Where any portion of the Work that is not on-Site requires a federal or state permit or approval, Performing Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.     Performing Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) for any delay in the

performance of the Work resulting from the failure to obtain, or a delay in obtaining, any permit or approval, including any required municipal approval, referenced in Paragraph 8.a and necessary for the implementation of the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.     PERFORMANCE OF THE WORK BY PERFORMING SETTLING DEFENDANTS

9.     Selection of Supervising Contractor.

a.     All aspects of the Work to be performed by Performing Settling Defendants pursuant to Sections VI (Performance of the Work by Performing Settling Defendants), VII (Remedy Review), VIII (Quality Assurance, Sampling and Data Analysis), and XV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor.  EPA has issued an authorization to proceed regarding the hiring of Haley & Aldrich as Supervising Contractor.  If at any time hereafter, Performing Settling Defendants propose to change this Supervising Contractor, Performing Settling Defendants shall give such notice to EPA, and must obtain an authorization to proceed from EPA, after reasonable opportunity for review and comment by DTSC, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.  Performing Settling Defendants shall demonstrate that the proposed replacement contractor has a quality assurance system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs" (American National Standard, January 5, 1995), by

18

submitting a copy of the proposed contractor's Quality Management Plan ("QMP").  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPS/240/B-01/002, March, 2001, reissued May 2006) or equivalent documentation as determined by EPA.

b.     If EPA disapproves a proposed replacement Supervising Contractor, EPA will notify the Performing Settling Defendants in writing. Performing Settling Defendants shall submit to EPA and DTSC a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the replacement contractor previously proposed.  EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Performing Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA and DTSC of the name of the replacement contractor selected within 21 days of EPA's authorization to proceed.  If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents Performing Settling Defendants from meeting one or more deadlines in a plan approved by EPA pursuant to this Consent Decree, Performing Settling Defendants may seek relief under Section XVIII (Force Majeure).

10.     Remedial Design.

a.     As noted in Section I(K) of this Consent Decree, EPA completed the EPA Remedial Design Reports in September 2007. Performing Settling Defendants shall submit to EPA and DTSC, as part of the Remedial Action Work Plan(s) described in Paragraph 11, one or more Supplemental Remedial Designs for the design of the remedy set forth in the

ROD or in a Consent Decree ROD Amendment in accordance with the SOW or an amended SOW and for achievement of the Performance Standards and other requirements set forth in the ROD, this Consent Decree, and the SOW or an amended SOW.  Upon approval of the Remedial Action Work Plan(s) by EPA, after reasonable opportunity for review and comment by DTSC, the Supplemental Remedial Design(s) shall be incorporated into and enforceable under this Consent Decree.

11.   <u>Remedial Action</u>.

a.   As set out in the SOW, the Group has performed work pursuant to the Order since 2009 and in the course of its compliance with the Order has completed and submitted deliverables approved by EPA in furtherance of the Remedial Action.  Those previously submitted and approved deliverables are listed and described in the SOW.

b.   The Remedial Action is being conducted in three phases.  EPA has approved work plans submitted by the Performing Settling Defendants for Phase 1 Soil and Phase 1 Groundwater and Addenda that described the remedial work to be performed for the soil (Operable Unit 2, or "OU2") and groundwater (Operable Unit 1 or "OU1").  Phases 2 and 3 will entail preparation of a single work plan for each phase.  The Phase 2 Remedial Action Work Plan shall include details for an OU1 downgradient containment and treatment system or the alternative Remedial Action selected by EPA in a Consent Decree ROD Amendment after evaluation of monitored natural attenuation ("MNA") and, if appropriate, the Focused Feasibility Study as set out in the SOW. The Phase 3 Remedial Action Work Plan shall include details for OU2 soil excavation and disposal.  The Remedial Action Work Plans for Phase 2 and Phase 3 must be reviewed and approved by EPA, after reasonable opportunity for review and comment by DTSC.

c.      Each Work Plan shall include:

i.      Project Description

A.      The Phase 2 Remedial Action Work Plan (RAWP) shall include details associated with the OU1 downgradient containment and treatment system, the Remedial Action selected in the ROD; unless EPA selects an alternative Remedial Action in a Consent Decree ROD Amendment after the Parties complete the following process:

1.      The PSDs shall implement the *MNA Assessment Work Plan* previously approved by EPA and submit the MNA sampling data and assessment to EPA in a Technical Memo within 60 days after completion of the two-year sampling program.  If EPA thereafter selects MNA as the Remedial Action in a Consent Decree ROD Amendment, the Parties shall modify the Consent Decree pursuant to the provisions of Paragraph 113.  If the Court approves the modification, the PSDs shall implement MNA and the Phase 2 RAWP shall include details associated with the implementation of MNA.

2.      If EPA does not select MNA as the Phase 2 OU1 Remedial Action, the PSDs, within twelve months of receiving such notice from EPA, shall submit an FFS to EPA to re-evaluate the feasibility and effectiveness of groundwater extraction and treatment against alternative remedial technologies. The FFS shall include the PSDs' recommended alternative Remedial Action as an alternative to groundwater extraction and treatment. If, after review of the FFS, EPA selects the PSDs' recommended alternative Remedial Action in

21

a Consent Decree ROD Amendment, the Parties shall modify the Consent Decree pursuant to the provisions of Paragraph 113. If the Court approves the modification, the PSDs shall implement such alternative Remedial Action and the Phase 2 RAWP shall include the details associated with implementation of such alternative Remedial Action.

3.   a) If EPA selects an alternative Remedial Action for OU1 Phase 2 pursuant to (1) or (2), above, in this subparagraph, the Phase 2 RAWP will be submitted pursuant to the schedule in the amended SOW after Court approval of the modification of this Consent Decree incorporating the Consent Decree ROD Amendment.

b) If EPA does not select an alternative Remedial Action for OU1 Phase 2 pursuant to (1) or (2) above, then the PSDs shall submit the Phase 2 RAWP for implementation of groundwater extraction and treatment, the Remedial Action selected in the ROD, pursuant to the schedule in the SOW.

The provisions of this Paragraph 11(c)(i) do not alter or affect in any way the authority of EPA to take any of the actions set out in paragraphs 86 and 87 (Pre-certification and Post-certification Reservations), including, without limitation, the authority to promulgate ROD Amendments. The provisions of this Paragraph 11(c)(i) do not alter or affect in any way the authority of EPA to select further response actions or the obligation of the PSDs to perform further response actions as set out in Paragraphs 17-20 of this Consent Decree.

B.   The Phase 3 Soil Excavation and Disposal Work Plan shall include details for implementation of excavation and

disposal of non-VOCs in soil, and shall address implementation of Institutional Controls where soil excavation is not practicable.  On the basis of pre-excavation soil sampling and considerations of accessibility, community impact, and air quality impact, EPA will determine the extent of excavation and the need, if any, for Institutional Controls.

The results of the pre-excavation characterization, the final excavation limits, and a strategy for implementation of EPA-selected Institutional Controls shall be presented in the Phase 3 OU2 RAWP.

ii.    Description of the Responsibility and Authority of All Organizations and Key Personnel Involved With the Remedial Action

Each Work Plan shall define lines of authority and provide brief descriptions of duties.

iii.    Schedule

Each Remedial Action Work Plan shall identify the initiation and completion dates for each required construction activity, inspection, and deliverable required by the SOW schedule.  The schedule shall include coordination meetings and other activities as set out in Section IV(B)(3) of the SOW. Coordination meetings may take place telephonically.

iv.    Contracting Strategy and Construction Process

Each Remedial Action Work Plan shall briefly describe the planned contracting strategy, including a description of the EPA evaluation and approval process for significant construction changes.

v.    <u>Plans for Satisfying All Permitting Requirements and Acquiring Property, Leases, Easements, or Other Access</u>

Each Remedial Action Work Plan shall list: all permits, property, leases, and easements required for implementation of the Remedial Action; permits, property, access rights, leases and easements acquired to date; and a schedule for submittal of permit applications and acquisition of property, leases or easements not yet obtained.

Where normally required, permits must be obtained for all off-Site activities. The Performing Settling Defendants are not required to obtain permits for on-Site remedial activities, but must comply with all substantive requirements, including building codes. If a permit will not be obtained for an on-Site activity where a permit is usually required, the Work Plan shall describe all consultative or coordination activities planned to identify and satisfy the substantive requirements.

vi.    <u>Third Parties Necessary for Construction, or Operation and Maintenance of the Remedial Action</u>

Each Remedial Action Work Plan shall describe the roles and responsibilities of Performing Settling Defendants, the County of Los Angeles, the City of South Gate, participating water and wastewater agencies, and other parties expected to play a significant role in the construction or operation of the Remedial Action, and shall provide the related information required by the SOW.

vii.    <u>Identification of Any Concerns About the Quantity, Quality, Completeness, or Usability of Water Quality or Other Data Upon Which the Design was Based</u>

Each Remedial Action Work Plan shall provide a description of additional data collection efforts, if any, required for completion of the Remedial Design for the Remedial Action, and shall consider whether any data are needed to verify that critical design assumptions remain valid.  If additional data are required, the Remedial Action Work Plan shall propose a schedule for preparation and implementation of a Sampling and Analysis Plan or Addendum.

viii.    Description of Planned Community Relations Activities to be Conducted During the Remedial Action

Each Remedial Action Work Plan shall affirm that the Performing Settling Defendants shall cooperate with EPA and DTSC in providing community relations support work.  This support shall be at the request of EPA and may include:

A.    Logistical support for public informational or technical meetings, including:  the provision/copying of presentations, signage, exhibits, visual aids and equipment; renting and setting up meeting locations; and English translation support at public meetings;

B.    Publication and copying of fact sheets or updates, and document translation;

C.    Assistance in placing EPA-generated public notices in print; and

D.    Logistical support for EPA-conducted community interviews.

ix.    Updates to the Remedial Action Work Plans and Periodic Reporting to the EPA

25

Each Remedial Action Work Plan shall describe provisions for reporting progress to EPA consistent with the schedule included in the SOW and the OU1 Monitoring Plan for Groundwater and OU2 Monitoring Plan for Soil.

d.      Upon approval of any Remedial Action Work Plan by EPA, Performing Settling Defendants shall implement the activities required under the Remedial Action Work Plan. Performing Settling Defendants shall submit to EPA and DTSC all reports and other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule in the SOW for review and approval pursuant to Section XII (EPA Approval of Plans and Other Submissions).  Unless otherwise directed by EPA, Performing Settling Defendants shall not commence physical Remedial Action activities at the Site pursuant to any Remedial Action Work Plan prior to receipt of EPA approval of that Remedial Action Work Plan.

12.     Performing Settling Defendants shall continue to implement the Remedial Action until the Performance Standards are achieved.  Performing Settling Defendants shall implement O&M for so long thereafter as is required under this Consent Decree.

13.     Modification of the SOW or Related Work Plans.

a.      If EPA, after reasonable opportunity for review and comment by DTSC, determines that it is necessary to modify the work specified in the SOW and/or in work plans developed pursuant to the SOW to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, and such modification is consistent with the scope of the remedy set forth in the ROD, then EPA may issue such modification in writing and shall notify Performing Settling Defendants of such modification.  For purposes of this Paragraph and

Paragraph 49 (Completion of the Remedial Action) only, the "scope of the remedy set forth in the ROD" is:

    i.    Restoration of groundwater to drinking water standards for certain volatile organic compound(s) ("VOC") through treatment. The remedy set forth in the ROD includes extraction and treatment using liquid phase activated carbon vessels, with containment to be provided at the downgradient extent of contamination. The remedy set forth in the ROD includes chemical in-situ treatment to enhance the treatment of COCs in groundwater.

    ii.    Remediation of soil COCs to prevent VOCs from migrating into groundwater at levels which would exceed drinking water standards. The remedy for soils set forth in the ROD includes dual phase extraction for treatment of VOCs.

    iii.    Remediation, where feasible, of non-VOC contaminated soil to health-action levels protective of ongoing and potential future Site uses. The remedy for non-VOC contaminated soils set forth in the ROD includes excavation for disposal, if practicable and Institutional Controls for protectiveness where excavation is not practicable.

    iv.    Remediation of soil and groundwater VOCs to health-based action levels to eliminate potential exposures to contaminated indoor air.

If Performing Settling Defendants object to the modification they may, within 30 days after EPA's notification, invoke dispute resolution under Paragraph 69 (Record Review).

    b.    The remediation of all aquifers at the Site underlying the Gaspur Aquifer, including the Exposition Aquifer, is not within the scope of the remedy set forth in the ROD.  Such remediation, or any response actions with respect to aquifers underlying the Gaspur Aquifer, other than the

monitoring of the Exposition Aquifer described in the SOW, will require a separate administrative or judicial enforcement action seeking to enforce implementation of a remedy set forth in a decision document other than the ROD.

c.      The SOW and/or related work plans shall be modified:  (1) in accordance with the modification issued by EPA; or (2) if Performing Settling Defendants invoke dispute resolution, in accordance with the final resolution of the dispute.  The modification shall be incorporated into and enforceable under this Consent Decree, and Performing Settling Defendants shall implement all work required by such modification.  Performing Settling Defendants shall incorporate the modification into the Remedial Design or Remedial Action Work Plan under Paragraph 10 (Remedial Design) or Paragraph 11 (Remedial Action), as appropriate.

d.      Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.  Nothing in this Paragraph shall be construed to limit DTSC's authority to require performance of further response actions except as provided in this Consent Decree.

14.     Nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

15.     <u>Off-Site Shipment of Waste Material</u>

a.      Performing Settling Defendants may ship Waste Material from the Site to an off-Site facility only if they verify, prior to any shipment, that the off-Site facility is operating in compliance with the requirements of Section 121(d)(3) of CERCLA, 42 U.S.C. § 9621(d)(3), and 40 C.F.R. § 300.440, by obtaining a determination from EPA that the proposed receiving

facility is operating in compliance with 42 U.S.C. § 9621(d)(3) and 40 C.F.R. § 300.440.

b.    Performing Settling Defendants may ship Waste Material from the Site to an out-of-state waste management facility only if, prior to any shipment, they provide written notice to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator. This notice requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.  The written notice shall include the following information, if available:  (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the schedule for the shipment; and (4) the method of transportation. Performing Settling Defendants shall also notify the state environmental official referenced above and the EPA Project Coordinator of any major changes in the shipment plan, such as a decision to ship the Waste Material to a different out-of-state facility.  Performing Settling Defendants shall provide the written notice after the award of the contract for Remedial Action construction and before the Waste Material is shipped.

## VII.   REMEDY REVIEW

16.    Periodic Review.  Performing Settling Defendants shall conduct any studies and investigations that EPA requests in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and any applicable regulations.

17.    EPA Selection of Further Response Actions.  If EPA determines, after reasonable opportunity for review and comment by DTSC, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site, including, without limitation, response actions

for the Phase 2 OU1 Remedial Action selected by EPA after either the MNA evaluation or the FFS pursuant to Paragraph 11 of this Consent Decree, in accordance with the requirements of CERCLA and the NCP, including any State of California notice and participation requirements contained therein.

18.     <u>Opportunity To Comment</u>.  Performing Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, 42 U.S.C § 9613(k)(2) or 9617, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

19.     <u>Performing Settling Defendants' Obligation To Perform Further Response Actions.</u>  If EPA selects further response actions at the Site, EPA may require Performing Settling Defendants to perform such further response actions, but only to the extent that the reopener conditions in Paragraph 86 or Paragraph 87 (United States' Pre-and Post-Certification Reservations) are satisfied.  Performing Settling Defendants may invoke the procedures set forth in Section XIX (Dispute Resolution) to dispute (a) EPA's determination that the reopener conditions of Paragraphs 86 or 87 are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions.  Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Paragraph 69 (Record Review).

20.     <u>Submissions of Plans</u>.  If Performing Settling Defendants are required to perform further response actions pursuant to Paragraph 19, they shall submit a plan for such response action to EPA for approval in accordance with the procedures of Section VI (Performance of Work by Performing Settling Defendants).  Performing Settling Defendants shall implement the approved plan in accordance with the provisions of this Consent Decree.

# VIII.  <u>QUALITY ASSURANCE, SAMPLING AND DATA ANALYSIS</u>

21.  <u>Quality Assurance</u>.

a.  Performing Settling Defendants shall use the quality assurance, quality control, and chain of custody procedures for all treatability, design, compliance and monitoring samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001, reissued May 2006), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), and subsequent amendments to such guidelines upon Performing Settling Defendants' receipt of notification by EPA of such amendment.  Amended guidelines shall apply only to procedures conducted after such notification.

b.  Prior to the commencement of any monitoring project under this Consent Decree, Performing Settling Defendants shall submit to EPA for approval, after reasonable opportunity for review and comment by DTSC, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and Uniform Federal Policy QAPP Manual or the EPA QA/G-5 QAPP guidance, including subsequent revisions thereto.  If relevant to the proceeding, Performing Settling Defendants and EPA agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree.  Performing Settling Defendants shall ensure that EPA and DTSC personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Performing Settling Defendants in implementing this Consent Decree.  In addition, Performing Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring.  Performing Settling Defendants shall ensure that the laboratories they utilize for the analysis of

samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods.  Accepted EPA methods consist of those methods which are documented in the "USEPA Contract Laboratory Statement of Work for Inorganic Analysis, ILM05.4" and the "USEPA Contract Laboratory Program Statement of Work for Organic Analysis, SOM01.2," and any amendments made thereto during the course of the implementation of this Consent Decree. Notwithstanding the foregoing, upon approval by EPA, after reasonable opportunity for review and comment by DTSC, Performing Settling Defendants may use other analytical methods with equivalent level of QA/QC documentation as defined by the Region IX "Laboratory Documentation Required for Data Evaluation, R9QA/004.2 August 2001" guidance.  Performing Settling Defendants shall ensure that all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent quality assurance/quality control ("QA/QC") program. Performing Settling Defendants shall only use laboratories that have a documented Quality System that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," ("American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001, reissued May 2006) or equivalent documentation as determined by EPA.  EPA considers laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements.  Performing Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree are conducted in accordance with the procedures set forth in the QAPP approved by EPA.

22.     Upon request, Performing Settling Defendants shall allow split or duplicate samples to be taken by EPA or DTSC or their authorized representatives. Performing Settling Defendants shall notify EPA not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA.  In addition, EPA or DTSC shall have the right to take any additional samples that EPA deems necessary.  EPA or DTSC shall notify Performing Settling Parties not less than 14 days in advance of its plan to take such additional samples.  Upon request, EPA or DTSC shall allow Performing Settling Defendants to take split or duplicate samples of any samples it takes as part of EPA's oversight of Performing Settling Defendants' implementation of the Work.

23.     Performing Settling Defendants shall submit to EPA and DTSC two copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Performing Settling Defendants with respect to the Site and/or the implementation of this Consent Decree unless EPA or DTSC agrees otherwise. Copies may be delivered to EPA or DTSC by electronic means including email.

24.     Notwithstanding any provision of this Consent Decree, the United States retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## IX.   ACCESS AND INSTITUTIONAL CONTROLS

25.     If the Site, or any other real property where access and/or land/water use restrictions are needed, is owned or controlled by any of the Settling Defendants:

a.      such Settling Defendants shall, commencing on the date of lodging of this Consent Decree, provide the United States, DTSC and the other Settling Defendants, and their representatives, contractors, and subcontractors, with access at all reasonable times to the Site, or such other

real property, to conduct any activity regarding the Consent Decree including, but not limited to, the following activities:

   (1) monitoring the Work;

   (2) verifying any data or information submitted to the United States;

   (3) conducting investigations relating to contamination at the Site;

   (4) obtaining samples;

   (5) assessing the need for, planning, or implementing additional response actions at  the Site;

   (6) assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

   (7) implementing the Work pursuant to the conditions set forth in Paragraph 90 (Work Takeover);

   (8) inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV (Access to Information);

   (9) assessing Performing Settling Defendants' compliance with this Consent Decree;

   (10) determining whether the Site or other real property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the Consent Decree; and

   (11) implementing, monitoring, maintaining, reporting on, and enforcing any Institutional Controls.

  b. Commencing on the date of lodging of the Consent Decree, Settling Defendants shall not use the Site, or such other real property, in any manner that EPA, after reasonable opportunity for review and comment by

DTSC, determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action or O&M.

26.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any Settling Defendant, Performing Settling Defendants shall use best efforts to secure from such persons:

(a)     an agreement to provide access thereto for such Performing Settling Defendants, as well as for the United States on behalf of EPA and DTSC, as well as their representatives (including contractors), for the purpose of conducting any activity specified in this Consent Decree including, but not limited to, those activities listed in Paragraph 25 of this Consent Decree.

(b)     an agreement, enforceable by Performing Settling Defendants and the United States and DTSC, to refrain from using the Site, or such other real property, in any manner that EPA, after reasonable opportunity for review and comment by DTSC, determines will pose an unacceptable risk to human health or the environment due to exposure to Waste Material or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action.

27.     For purposes of Paragraph 26 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance.  If within 30 days of the Effective Date, Performing Settling Defendants have not obtained any access or land/water use restriction agreements required by Paragraphs 25 and 26 of this Consent Decree, Performing Settling Defendants shall promptly notify the

United States in writing, and shall include in that notification a summary of the steps that the Performing Settling Defendants have taken to attempt to comply with Paragraph 25 or 26 of this Consent Decree.  The United States may, as it deems appropriate, assist Performing Settling Defendants in obtaining access or land/water use restrictions, or in obtaining the release or subordination of a prior lien or encumbrance.  Performing Settling Defendants will reimburse the United States under Section XVI (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, agreements to restrict land/water use, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration or just compensation paid by the United States to any landowner.  The foregoing commitments in Paragraphs 26 and 27 do not apply to any property owned by Cooper Living Trust or Cooper Properties, LP or their successors.

28.    If EPA, after reasonable opportunity for review and comment by DTSC, determines that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls are needed at or in connection with the Site, Performing Settling Defendants will cooperate with EPA's efforts to secure and ensure compliance with such Institutional Controls.

29.    Notwithstanding any provision of this Consent Decree, the United States and DTSC retain all of their access authorities and rights, as well as all of its rights to require Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X.   REPORTING REQUIREMENTS

30.    In addition to any other requirement of this Consent Decree, Performing Settling Defendants shall submit to EPA and DTSC two copies of written monthly progress reports that:  (a) describe the actions which have been

taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Performing Settling Defendants or their contractors or agents in the previous month; (c) identify all plans, reports,  and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, that are scheduled for the next six weeks and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Performing Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Involvement Plan during the previous month and those to be undertaken in the next six weeks. These reports may be submitted by electronic means including email.  Performing Settling Defendants shall submit these progress reports to EPA and DTSC by the tenth day of every month following the lodging of this Consent Decree until EPA notifies Performing Settling Defendants the reports are no longer required pursuant to Section XIV (Certificate of Completion) or until EPA, DTSC, and Performing Settling Defendants agree to a modified schedule.  If requested by EPA or DTSC, Performing Settling Defendants shall also provide briefings for EPA and DTSC to discuss the progress of the Work.

31.    Performing Settling Defendants shall notify EPA and DTSC of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and

implementation of work plans, no later than seven days prior to the performance of the activity or as otherwise agreed by the Parties.

32.    Upon the occurrence of any event during performance of the Work that Performing Settling Defendants are required to report pursuant to Section 103 of CERCLA, 42 U.S.C. § 9603, or Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11004,  Performing Settling Defendants shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region IX, United States Environmental Protection Agency.  These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304. Immediately following notice to EPA as required by this Paragraph, Performing Settling Defendants shall orally notify the DTSC Project Coordinator.

33.    Within 20 days of the onset of such an event, Performing Settling Defendants shall furnish to EPA a written report, signed by an authorized representative of the Performing Settling Defendants, setting forth the events that occurred and the measures taken, and to be taken, in response thereto.  Within 30 days after the conclusion of such an event, Performing Settling Defendants shall submit a report setting forth all actions taken in response thereto.

34.    Performing Settling Defendants shall submit two copies of all plans, reports, data, and other deliverables required by the SOW, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans.  Performing Settling Defendants shall simultaneously submit two copies of all such plans, reports and data to the DTSC.  Upon request by EPA or DTSC, and to the extent feasible, Performing Settling Defendants shall submit in electronic form all or any portion of any deliverables Performing Settling

Defendants are required to submit pursuant to the provisions of this Consent Decree.

35.     All deliverables submitted by Performing Settling Defendants to EPA or DTSC that purport to document Performing Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of Performing Settling Defendants.

## XI.     EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

36.     <u>Initial Submission.</u>

(a)     After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA shall, after reasonable opportunity for review and comment by DTSC:  (1) approve, in whole or in part, the submission; (2) approve the submission upon specified conditions; (3) disapprove, in whole or in part, the submission; or (4) any combination of the foregoing.

(b)     EPA may also modify the initial submission to cure deficiencies in the submission if: (1) EPA determines that disapproving the submission and awaiting a resubmission would cause substantial disruption to the Work; or (2) previous submission(s) have been disapproved due to material defects and the deficiencies in the initial submission under consideration indicate a bad faith lack of effort to submit an acceptable plan, report or deliverable.

37.     <u>Resubmissions.</u>  Upon receipt of a notice of disapproval under Paragraph 36(3) or (4) or if required by a notice of approval upon specified conditions under Paragraph 36(2), after reasonable opportunity for review and comment by DTSC, Performing Settling Defendants shall, within 30 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other deliverable for approval.  After review of the resubmitted plan, report, or other deliverable, EPA may:  (a) approve, in whole or in part, the resubmission; (b) approve the resubmission upon specified conditions;

(c) modify the resubmission; (d) disapprove, in whole or in part, the resubmission, requiring Performing Settling Defendants to correct the deficiencies; or (e) any combination of the foregoing

38.   <u>Material Defects</u>.  If an initially submitted or resubmitted plan, report, or other deliverable contains a material defect, and the plan, report, or other deliverable is disapproved or modified by EPA under Paragraph 36(3) or 37(c) due to such material defect, then EPA shall provide notice of same to Performing Settling Defendants and provide a reasonable period within which to cure such defect.  If the defect is not timely cured, the material defect shall constitute a lack of compliance for purposes of Paragraph 72.  The provisions of Section XIX (Dispute Resolution) and Section XX (Stipulated Penalties) shall govern the accrual and payment of any stipulated penalties regarding Performing Settling Defendants' submissions under this Section.

39.   <u>Implementation</u>.  Upon approval or approval upon conditions of any plan, report, or other deliverable, or any portion thereof: (a) such plan, report, or other deliverable, or portion thereof, shall be incorporated into and enforceable under this Consent Decree; and (b) Performing Settling Defendants shall take any action required by such plan, report, or other deliverable, or portion thereof, subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX (Dispute Resolution) with respect to the modifications or conditions made by EPA.  The implementation of any non-deficient portion of a plan, report, or other deliverable submitted or resubmitted under Paragraph 36 or 37 shall not relieve Performing Settling Defendants of any liability for stipulated penalties under Section XXI (Stipulated Penalties).

## XII.  **PROJECT COORDINATORS**

40.   Within 20 days after lodging this Consent Decree, Performing Settling Defendants and EPA will notify each other, in writing, of the name, address, telephone number, and email address of their respective designated Project

Coordinators and Alternate Project Coordinators.  If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the change occurs, unless impracticable, but in no event later than the actual day the change is made.  Performing Settling Defendants' Project Coordinator shall be subject to disapproval by EPA, after reasonable opportunity for review and comment by DTSC, and shall have the technical expertise sufficient to adequately oversee all aspects of the Work.  Performing Settling Defendants' Project Coordinator shall not be an attorney for any Settling Defendant in this matter.  He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

42.   Plaintiffs may designate other representatives, including, but not limited to, EPA and DTSC employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree.  EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the NCP, 40 C.F.R. Part 300.  EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the NCP, to halt any Work required by this Consent Decree and to take any necessary response action when he or she determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

42.   EPA's Project Coordinator and Performing Settling Defendants' Project Coordinator will meet on an "as needed" basis.  DTSC's Project Coordinator shall be allowed to participate in such meetings at DTSC's discretion.

41

# XIII.  **PERFORMANCE GUARANTEE**

43.     In order to ensure the full and final completion of the Work, Performing Settling Defendants shall establish and maintain a performance guarantee, initially in the amount of $15,000,000.00, for the benefit of EPA (hereinafter "Estimated Cost of the Work").  The performance guarantee, which must be satisfactory in form and substance to EPA, shall be in the form of one or more of the following mechanisms (provided that, if Performing Settling Defendants intend to use multiple mechanisms, such multiple mechanisms shall be limited to surety bonds guaranteeing payment, letters of credit, trust funds, and insurance policies):

a.     A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.     One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (1) that has the authority to issue letters of credit and (2) whose letter-of-credit operations are regulated and examined by a federal or state agency;

c.     A trust fund established for the benefit of EPA that is administered by a trustee (1) that has the authority to act as a trustee and (2) whose trust operations are regulated and examined by a federal or state agency;

d.     A policy of insurance that (1) provides EPA with acceptable rights as a beneficiary thereof; and (2) is issued by an insurance carrier (i) that  is eligible to issue insurance policies in the applicable jurisdiction(s) and (ii) whose insurance operations are regulated and subject to examination by a federal or state agency;

e. A demonstration by one or more Performing Settling Defendants that each such Performing Settling Defendant meets the financial test criteria of 40 C.F.R. Part 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee), provided that all other requirements of 40 C.F.R. § 264.143(f) are met to EPA's satisfaction; or

f. A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (1) a direct or indirect parent company of a Performing Settling Defendant, or (2) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Performing Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test and reporting requirements for owners and operators set forth in subparagraphs (1) through (8) of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work (plus the amount(s) of any other federal or any state environmental obligations financially assured through the use of a financial test or guarantee) that it proposes to guarantee hereunder.

44. Performing Settling Defendants have selected, and EPA has found satisfactory, as an initial performance guarantee, pursuant to Paragraph 43(a)(b) and (d), a combination of surety bonds, letters of credit and policies of insurance in the forms attached hereto as Appendix J. Within ten days after the Effective Date, Performing Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee(s) legally binding in a form substantially identical to the documents attached hereto as Appendix J, and such performance guarantee shall thereupon be fully effective. Within 30 days after the Effective Date, Performing Settling

Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions) with a copy to the United States.

45.     If, at any time after the Effective Date and before the issuance of the Certificate of Completion of the Work pursuant to Section XIV, Performing Settling Defendants provide a performance guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 43(e) or 43(f), performing Settling Defendants shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f) relating to these mechanisms unless otherwise provided in this Consent Decree, including but not limited to: (a) the initial submission of required financial reports and statements from the relevant entity's chief financial officer ("CFO") and independent certified public accountant ("CPA"), in the form prescribed by EPA in its test sample CFO letters and CPA reports available at: http://www.epa.gov/compliance/resources/policies/cleanup/ superfund/fa-test-samples.pdf; (b) the annual resubmission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (c) the prompt notification of EPA after each such entity determines that it no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1) and in any event within 90 days after the close of any fiscal year in which such entity no longer satisfies such financial test requirements.  For purposes of the performance guarantee mechanisms specified in this Section XIII only, references in 40 C.F.R. Part 264, Subpart H, to "closure", "post-closure", and "plugging and abandonment" shall be deemed to include the Work; the terms "current closure cost estimate," "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to include the Estimated Cost of the Work; the terms "owner" and "operator" shall be deemed to refer to each

Performing Settling Defendant making a demonstration under Paragraph 43; and the terms "facility" and "hazardous waste facility" shall be deemed to include the Site.

46.     In the event that EPA determines at any time that a performance guarantee provided by a Performing Settling Defendant is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of implementing the Work, or for any other reason, or in the event that any Performing Settling Defendant becomes aware of information indicating that a performance guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Performing Settling Defendants, within 30 days after receipt of notice of EPA's determination or, as the case may be, within 30 days after any Performing Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of performance guarantee listed in Paragraph 43 that satisfies all requirements set forth in this Section XIII; provided, however, that if any Performing Settling Defendant cannot obtain such revised or alternative form of performance guarantee within such 30-day period, and provided further that a Performing Settling Defendant shall have commenced to obtain such revised or alternative form of performance guarantee within such 30-day period, and thereafter diligently proceeds to obtain the same, EPA shall extend such period for such time as is reasonably necessary for the Performing Settling Defendant in the exercise of due diligence to obtain such revised or alternative form of performance guarantee, such additional period not to exceed 30 days.  In seeking approval for a revised or alternative form of performance guarantee, Performing Settling Defendants shall follow the procedures set forth in Paragraph 48.  Performing Settling Defendants' inability to post a performance guarantee for completion of the Work shall in no

way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Performing Settling Defendants to complete the Work in strict accordance with the terms of this Consent Decree.

47. <u>Funding for Work Takeover</u>. The commencement of any Work Takeover pursuant to Paragraph 90 shall trigger EPA's right to receive the benefit of any performance guarantee(s) provided pursuant to Paragraphs 43.a, 43.b, 43.c, 43.d or 43.f, and at such time EPA shall have immediate access to resources guaranteed under any such performance guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. Upon the commencement of any Work Takeover, if (a) for any reason EPA is unable to promptly secure the resources guaranteed under any such performance guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or (b) in the event that the performance guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 43.e or Paragraph 43.f(2), Performing Settling Defendants (or, in the case of Paragraph 43.f(2), the guarantor) shall, upon written demand from EPA, deposit into a special account within the EPA Hazardous Substance Superfund, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of completing the Work as of such date, as determined by EPA. In addition, if at any time EPA and/or the Performing Settling Defendants is/are notified by the issuer of a performance guarantee that such issuer intends to cancel the performance guarantee mechanism it has issued, then, unless Performing Settling Defendants provide a substitute performance guarantee mechanism in accordance with this Section XIII no later than 30 days prior to the impending cancellation date, EPA shall be entitled (as of and after the date that is 30 days prior to the impending cancellation) to draw fully on the funds guaranteed under the then-existing performance guarantee. All EPA Work Takeover Costs not

reimbursed under this Paragraph shall be reimbursed under Section XVI (Payments for Response Costs).

      48.   <u>Modification of Amount and/or Form of Performance Guarantee</u>

          a.   <u>Reduction of Amount of Performance Guarantee.</u>  If Performing Settling Defendants believe that the estimated cost of completing the Work has diminished below the amount set forth in Paragraph 43, Performing Settling Defendants may, on any anniversary of the Effective Date, or at any other time agreed to by the Parties, petition EPA in writing to reduce the amount of the performance guarantee provided pursuant to this Section so that the amount of the performance guarantee is equal to the estimated cost of completing the Work.  Performing Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the estimated cost of completing the Work and the basis upon which such cost was calculated. In seeking approval for a reduction in the amount of the performance guarantee, Performing Settling Defendants shall follow the procedures set forth in Paragraph 48(b) for requesting a revised or alternative form of performance guarantee, except as specifically provided in this Paragraph 48(a).  If EPA decides to accept Performing Settling Defendants' proposal for reduction in the amount of the performance guarantee, either to the amount set forth in Performing Settling Defendants' written proposal or to some other amount as selected by EPA, EPA will notify the petitioning Performing Settling Defendants of such decision in writing.  Upon EPA's acceptance of a reduction in the amount of the performance guarantee, the Estimated Cost of the Work shall be deemed to be the estimated cost of completing the Work set forth in EPA's written decision. After receiving EPA's written decision, Performing Settling Defendants may reduce the amount of the performance guarantee in accordance with and to the extent permitted by such written acceptance, and

shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding in accordance with Paragraph 44.  In the event of a dispute, Performing Settling Defendants may reduce the amount of the performance guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).  Unless agreed to by EPA and the Performing Settling Defendants in advance, no change to the form or terms of any performance guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraph 48(b).

  b. <u>Change of Form of Performance Guarantee</u>

   (1) If, after the Effective Date, Performing Settling Defendant(s) desire to change the form or terms of any performance guarantee provided pursuant to this Section, Performing Settling Defendants may, on any anniversary of the Effective Date or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form or terms of the performance guarantee provided hereunder.  The submission of such proposed revised or alternative performance guarantee shall be as provided in Paragraph 48(b)(2).  Any decision made by EPA on a petition submitted under this Paragraph shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Performing Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

   (2) Performing Settling Defendants shall submit a written proposal for a revised or alternative performance guarantee to EPA that shall specify, at a minimum, the estimated cost of completing the Work, the basis upon which such cost was calculated, and the

proposed revised performance guarantee, including all proposed instruments or other documents required in order to make the proposed performance guarantee legally binding.  The proposed revised or alternative performance guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Performing Settling Defendants shall submit such proposed revised or alternative performance guarantee to the EPA Regional Financial Management Officer in accordance with Section XXVI (Notices and Submissions).  EPA will notify Performing Settling Defendants in writing of its decision to accept or reject a revised or alternative performance guarantee submitted pursuant to this Paragraph.  Within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee, Performing Settling Defendants shall execute or otherwise finalize all instruments or other documents required in order to make the selected performance guarantee legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such performance guarantee(s) shall thereupon be fully effective. Performing Settling Defendants shall submit copies of all executed and/or otherwise finalized instruments or other documents required in order to make the selected performance guarantee(s) legally binding to the EPA Regional Financial Management Officer within 30 days after receiving a written decision approving the proposed revised or alternative performance guarantee in accordance with Section XXVI (Notices and Submissions) and to the United States and EPA as specified in Section XXVI.

c.      Release of Performance Guarantee.  Performing Settling Defendants shall not release, cancel, or discontinue any performance

49

guarantee provided pursuant to this Section except as provided in this Paragraph. If Performing Settling Defendants receive written notice from EPA in accordance with Paragraph 49(b) that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Performing Settling Defendants in writing, Performing Settling Defendants may thereafter release, cancel, or discontinue the performance guarantee(s) provided pursuant to this Section. In the event of a dispute, Performing Settling Defendants may release, cancel, or discontinue the performance guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute pursuant to Section XIX (Dispute Resolution).

## XIV. <u>CERTIFICATE OF COMPLETION</u>

49. <u>Completion of the Remedial Action</u>.

a. Within 90 days after Performing Settling Defendants conclude that the Remedial Action has been fully performed, and the Performance Standards have been achieved, Performing Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Performing Settling Defendants, DTSC and EPA. If, after the pre-certification inspection, Performing Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been achieved, they shall submit a written report, with a copy to DTSC, requesting certification to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions) within 30 days after the inspection. In the report, a registered professional engineer and Performing Settling Defendants' Project Coordinator, or other authorized representative, shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report

shall contain the following statement, signed by an authorized representative of Performing Settling Defendants or Performing Settling Defendants' Project Coordinator:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity for review and comment by DTSC, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Performing Settling Defendants in writing of the activities that must be undertaken by Performing Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Performing Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD" as that term is defined in Paragraph 13.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require Performing Settling

Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions).  Performing Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.     If EPA, after reasonable opportunity for review and comment by DTSC, concludes, based on the initial or any subsequent report requesting Certification of Completion of the Remedial Action, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will timely so certify in writing to Performing Settling Defendants.  This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI (Covenants by Plaintiffs).  Certification of Completion of the Remedial Action shall not affect Settling Defendants' remaining obligations under this Consent Decree.

50.   <u>Completion of the Work.</u>

a.     Within 90 days after Performing Settling Defendants conclude that all phases of the Work, other than any remaining activities required under Section VII (Remedy Review) have been fully performed, Performing Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Performing Settling Defendants, DTSC and EPA.  If, after the pre-certification inspection, Performing Settling Defendants still believe that the Work has been fully performed, Performing Settling Defendants shall submit to EPA and DTSC a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree.  The report shall contain the statement

set forth in Paragraph 49 signed by an authorized representative of Performing Settling Defendants or Performing Settling Defendants' Project Coordinator.  If, after review of the written report, EPA, after reasonable opportunity for review and comment by DTSC, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Performing Settling Defendants in writing of the activities that must be undertaken by Performing Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Performing Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy set forth in the ROD", as that term is defined in Paragraph 13.  EPA will set forth in the notice a schedule for performance of such activities consistent with the ROD and the SOW or require Performing Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI (EPA Approval of Plans and Other Submissions). Performing Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution).

b.      If EPA, after reasonable opportunity for review and comment by DTSC, concludes, based on the initial or any subsequent request for Certification of Completion of the Work by Performing Settling Defendants, that the Work has been performed in accordance with this Consent Decree, EPA will so notify Performing Settling Defendants in writing.

## XV.   EMERGENCY RESPONSE

51.    If any action or occurrence during the performance of the Work causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare

or the environment, Performing Settling Defendants shall, subject to Paragraph 52, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Performing Settling Defendant shall notify the EPA Emergency Response Unit, Region IX.  Performing Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW.  In the event that Performing Settling Defendants fail to take appropriate response actions as required by this Section and EPA, or as appropriate, DTSC, takes such action instead, Performing Settling Defendants shall reimburse EPA and DTSC for all costs of the response action not inconsistent with the NCP under Section XVI (Payments for Response Costs).

52.     Subject to Section XXI (Covenants by Plaintiffs), nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States or DTSC (a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site.

## XVI.     PAYMENTS FOR RESPONSE COSTS

53.     Payment by Settling Defendants for Past Response Costs

a.     Within 30 days after the Effective Date, Performing Settling Defendants shall pay to EPA $2,617,266.14 (Two Million, Six Hundred and Seventeen Thousand, Two Hundred Sixty-Six Dollars and Fourteen Cents)

in payment for Past Response Costs and to DTSC $53,599.49 (Fifty-Three Thousand, Nine Hundred and Ninety-Nine Dollars and Forty-Nine Cents) in payment for Past Response Costs.

b.       Ability-to-Pay Settling Defendants shall pay to EPA the amounts set out in Appendix F at the times set out therein.

c.       Each De Minimis Settling Defendant shall pay to EPA the amount set out for it in Appendix G at the time set out therein.

d.       The total amount to be paid by Settling Defendants to EPA pursuant to Paragraph 53(a)-(c) shall be deposited by EPA in the Cooper Drum Company Special Account to be retained and used to conduct or finance response actions at or in connection with the Site or to be transferred by EPA to the EPA Hazardous Substance Superfund.  Payments to DTSC under this Section shall be deposited in the Toxic Substances Control Account established pursuant to Health and Safety Code § 25173.6.

54.      Payments by Performing Settling Defendants for Interim Response Costs and Future Response Costs.  Performing Settling Defendants shall pay to EPA and DTSC all Interim Response Costs and all Future Response Costs not inconsistent with the NCP incurred at the Site.

a.       Performing Settling Defendants shall pay to EPA and DTSC all Interim Response Costs within 60 days after receipt of bills for Interim Response Costs from EPA and DTSC respectively, in accordance with Paragraph 55(a) (Instructions for Past Response Costs Payments and Interim Response Costs Payments).  The bill from EPA for Interim Response Costs will include a regionally-prepared cost summary that includes direct and indirect costs incurred by EPA and its contractors along with backup documentation for such costs and a DOJ cost summary along with back up documentation for such costs.  The bill from DTSC for Interim Response Costs will include a DTSC-prepared cost summary that includes direct and

indirect costs incurred by DTSC and its contractors along with backup documentation for those costs.

b.     On a periodic basis, EPA will send Performing Settling Defendants a bill for Future Response Costs requiring payment that includes a regionally-prepared cost summary that includes direct and indirect costs incurred by EPA and its contractors and a DOJ case cost summary along with backup documentation for those costs.  On a periodic basis, DTSC will send Performing Settling Defendants a bill for Future Response Costs requiring payment that includes a  DTSC-prepared cost summary that includes direct and indirect costs incurred by DTSC and its contractors along with backup documentation for those costs  Performing Settling Defendants shall make all payments within 60 days after Performing Settling Defendants' receipt of each bill requiring payment, in accordance with Paragraph 55(b) (Instructions for Future Response Costs Payments). The dispute resolution procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanism for resolving disputes regarding Performing Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

c.     The total amount to be paid to EPA by Performing Settling Defendants pursuant to Paragraphs 54(a) and (b) shall be deposited in the Cooper Drum Company Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

55.     Payment Instructions for Settling Defendants.

a.     Instructions for Past Response Costs Payments and Interim Response Cost Payments.  All payments to the United States required elsewhere in this Consent Decree to be made in accordance with this Paragraph 55 shall be made at https://www.pay.gov to the U.S. Department

of Justice account, in accordance with instructions provided to Settling Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Central District of California, Western Division, after the Effective Date or as otherwise agreed to by the Parties.  The payment instructions provided by the Financial Litigation Unit shall include a Consolidated Debt Collection System ("CDCS") number, which shall be used to identify all payments required to be made in accordance with this Consent Decree.  The FLU shall provide the payment instructions to:

> Kenny Ogilvie
> CDCPG Project Coordinator
> EHS Support LLC
> 110 Kentzel Road
> Pittsburgh, PA 15237412-855-3047 (Direct)
> Kenny.Ogilvie@ehs-support.com

on behalf of Settling Defendants. Settling Defendants may change the individual(s) to receive payment instructions on their behalf by providing written notice of such change in accordance with Section XXVII (Notices and Submissions).  When making payments under this Paragraph 55(a), Settling Defendants shall also comply with Paragraph 55(c).

      b.   <u>Instructions for Future Response Costs Payments</u>.  All payments required, elsewhere in this Consent Decree, to be made in accordance with this Paragraph 55(b) shall be made by Fedwire EFT to:

> Federal Reserve Bank of New York
> ABA:   021030004
> Account Number:   68010727
> SWIFT Address:  FRNYUS33
> 33 Liberty Street
> New York, NY 10045

Field Tag 4200 of the Fedwire message should read as follows: "D 68010727 Environmental Protection Agency".

c. <u>Instructions for All Payments to EPA</u>.  All payments made under Paragraphs 55(a) (Instructions for Past Response Costs Payments) or 55(b) (Instructions for Future Response Costs Payments) shall reference the CDCS Number, Site/Spill ID Number 091NPS, and DOJ case Number 90-11-2-09084.  At the time of any payment required to be made in accordance with Paragraphs 53 or 54, Settling Defendants shall send notice that payment has been made to the United States and to EPA, in accordance with Section XXVI (Notices and Submissions) and to the EPA Cincinnati Finance Office by email at acctsreceivable.cinwd@epa.gov, or by mail at 26 Martin Luther King Drive, Cincinnati, Ohio 45268. Such notice shall also reference the CDCS Number, Site/Spill ID Number, and DOJ Case Number.

d. <u>Instructions for all Payments to DTSC</u>.  All payments made by Settling Defendants to DTSC pursuant to this Consent Decree shall be made by check made payable to "DTSC" and shall bear on the face the project code of the Site (Site 300251). Payments shall be sent to:

> Department of Toxic Substances Control
> Accounting/Cashier
> 1001 I Street, 21st Floor
> PO Box 806
> Sacramento, CA  95812-0806

A photocopy of each payment check shall also be sent to the person designated by DTSC to receive submittals under this Consent Decree.

56. a. Performing Settling Defendants may contest any Future Response Costs billed under Paragraph 54 ("Payments by Performing Settling Defendants for Future Response Costs") if they determine that EPA has made a mathematical error or included a cost item that is not within the definition of Future Response Costs, or if they believe that EPA incurred excess costs as a direct result of an EPA action that was inconsistent with a specific provision or provisions of the NCP.  Such objection shall be made in writing within 30 days

after receipt of the bill and must be sent to the United States pursuant to Section XXVI (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, Performing Settling Defendants shall pay all uncontested Future Response Costs to the United States within 60 days after Performing Settling Defendants' receipt of the bill requiring payment.  Simultaneously, Performing Settling Defendants shall establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation ("FDIC") and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  Performing Settling Defendants shall send to the United States, as provided in Section XXVI (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank or trust company and account under which the escrow account is established as well as a statement showing the initial balance of the escrow account.  Simultaneously with establishment of the escrow account, Performing Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX (Dispute Resolution).  If the United States prevails in the dispute, Performing Settling Defendants shall pay the sums due (with accrued Interest) to the United States within ten days after resolution of the dispute.  If Performing Settling Defendants prevail concerning any aspect of the contested costs, Performing Settling Defendants shall pay that portion of the costs (plus associated accrued Interest) for which they did not prevail to the United States within ten days after resolution of the dispute.  Performing Settling Defendants shall be disbursed any balance of the escrow account.  All payments to the United States under this Paragraph shall be made in accordance with Paragraph 55(b) (Instructions for Future Response Costs Payments).

b.     If Performing Settling Defendants dispute a DTSC billing, or any part thereof, Performing Settling Defendants shall notify DTSC's assigned project manager and attempt to informally resolve the dispute with DTSC's project coordinator and branch chief.  If Performing Settling Defendants desire to formally request dispute resolution with regard to the billing, Performing Settling Defendants shall file a request for dispute resolution in writing within 45 days of receipt of the billing in dispute.  The written request shall describe all issues in dispute and shall set forth the reasons for the dispute, both factual and legal.  If the dispute pertains only to a portion of the costs included in the invoice, Performing Settling Defendants shall pay all costs which are undisputed in accordance with Paragraph 55(d).  The filing of a notice of dispute pursuant to this Paragraph shall not stay the accrual of Interest on any unpaid costs pending resolution of the dispute.  The written request shall be sent to:

> Chief, Collections and Resolution Unit
> Department of Toxic Substances Control
> PO Box 806
> Sacramento, CA 96812-0806

A copy of the written request for dispute resolution shall also be sent to the person designated by DTSC to receive submittals under this Consent Decree.  A decision on the billing dispute will be rendered by the Chief, Collections and Resolution Unit, or other DTSC designee.

c.     The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX (Dispute Resolution) shall be the exclusive mechanism for resolving disputes regarding Performing Settling Defendants' obligation to reimburse the United States or DTSC for its Future Response Costs.

57.     <u>Interest</u>.  In the event that any payment for Past Response Costs or Future Response Costs required under this Section is not made by the date

required, affected Settling Defendants shall pay Interest to EPA or DTSC on the unpaid balance as appropriate.  The Interest to be paid on Past Response Costs under this Paragraph shall begin to accrue on the date due.  The Interest on Future Response Costs shall begin to accrue on the due date of the bill.  The Interest shall accrue through the date of Settling Defendants' payment.  Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 79.

58.   <u>Payments between Settling Defendants</u>.  All payments to Performing Settling Defendants by Contributing Settling Defendants will be made in accordance with Appendix H.

**XVII.      <u>INDEMNIFICATION AND INSURANCE</u>**

59.   <u>Performing Settling Defendants' Indemnification of the United States</u>.

a.     The United States and DTSC do not assume any liability by entering into this Consent Decree or by virtue of any designation of Performing Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e).  Performing Settling Defendants shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Performing Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Performing Settling Defendants as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, Performing Settling Defendants agree to pay the United

States and DTSC all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States or DTSC based on negligent or other wrongful acts or omissions of Performing Settling Defendants, their officers, directors, employees, agents, contractors, subcontractors, and any persons acting on their behalf or under their control, in carrying out activities pursuant to this Consent Decree.  The United States and DTSC shall not be held out as parties to any contract entered into by or on behalf of Performing Settling Defendants in carrying out activities pursuant to this Consent Decree.  Neither Performing Settling Defendants nor any such contractor shall be considered an agent of the United States or DTSC.

b.      The United States and DTSC shall give Performing Settling Defendants notice of any claim for which the United States or DTSC plans to seek indemnification pursuant to this Paragraph 59(b), and shall consult with Performing Settling Defendants prior to settling such claim.

60.     Performing Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States or DTSC for damages or reimbursement or for set-off of any payments made or to be made to the United States or DTSC, arising from or on account of any contract, agreement, or arrangement between any one or more of Performing Settling Defendants and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Performing Settling Defendants shall indemnify and hold harmless the United States and DTSC with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between any one or more of Performing Settling Defendants and any person for performance of Work

on or relating to the Site, including, but not limited to, claims on account of construction delays.

61.     No later than 15 days before commencing any on-site Work, Performing Settling Defendants or their contractors shall secure, and shall maintain until the first anniversary after EPA's Certification of Completion pursuant to Section XIV (Certificate of Completion), commercial general liability insurance with limits of $5,000,000 (Five Million Dollars), for any one occurrence, and automobile liability insurance with limits of $2,000,000 (Two Million Dollars), combined single limit, naming the United States as an additional insured with respect to all liability arising out of the activities performed by or on behalf of Performing Settling Defendants pursuant to this Consent Decree.  In addition, for the duration of this Consent Decree, Performing Settling Defendants shall satisfy, or shall ensure that their respective contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Performing Settling Defendants in furtherance of this Consent Decree.  Prior to commencement of the Work under this Consent Decree, Performing Settling Defendants shall provide to EPA and DTSC certificates of such insurance and a copy of each insurance policy. Performing Settling Defendants shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date.  If Performing Settling Defendants demonstrate by evidence satisfactory to EPA and DTSC that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Performing Settling Defendants need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

//      //

//      //

## XVIII.        FORCE MAJEURE

62.      "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Performing Settling Defendants, of any entity controlled by Performing Settling Defendants, or of Performing Settling Defendants' contractors that delays or prevents the performance of any obligation under this Consent Decree despite Performing Settling Defendants' best efforts to fulfill the obligation.  The requirement that Performing Settling Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible.  "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards unless such financial inability is solely caused by third parties or circumstances outside the control of the Performing Settling Defendants.

63.      If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree for which Performing Settling Defendants intend or may intend to assert a claim of force majeure, Performing Settling Defendants shall notify EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Assistant Director of the Superfund Division, EPA Region IX, within five days of when Performing Settling Defendants first knew that the event would cause a delay.  Within ten days thereafter, Performing Settling Defendants shall provide in writing to EPA and DTSC an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Performing Settling Defendants'

rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Performing Settling Defendants, such event may cause or contribute to an endangerment to public health, welfare or the environment. Performing Settling Defendants shall include with any notice all available documentation supporting their claim that the delay was attributable to a force majeure.  Performing Settling Defendants shall be deemed to know of any circumstance of which Performing Settling Defendants or Performing Settling Defendants' contractors knew or should have known.  Failure to comply with the above requirements regarding an event shall preclude Performing Settling Defendants from receiving a determination of Force Majeure regarding that event, provided, however, that if EPA, despite the late notice, is able to assess to its satisfaction whether the event is a Force Majeure under Paragraph 62 and whether Performing Settling Defendants have exercised their best efforts under Paragraph 62, EPA, in its unreviewable discretion, may excuse in writing Performing Settling Defendants' failure to submit timely notices under this Paragraph.

64.     If EPA, after reasonable opportunity for review and comment by DTSC, agrees that the delay or anticipated delay is attributable to a Force Majeure, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure will be extended by EPA, after reasonable opportunity for review and comment by DTSC, for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the Force Majeure shall not, of itself, extend the time for performance of any other obligation.  If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure, EPA will promptly notify Performing Settling Defendants in writing of its decision.  If EPA, after reasonable opportunity for review and comment by DTSC, agrees that the delay is attributable to a Force Majeure, EPA will notify Performing Settling

Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure.

65.     If Performing Settling Defendants elect to invoke the dispute resolution procedures set forth in Section XIX (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice.  In any such proceeding, Performing Settling Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were or will be exercised to avoid and mitigate the effects of the delay, and that Performing Settling Defendants complied with the requirements of Paragraphs 62  and 63.  If Performing Settling Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Performing Settling Defendants of the affected obligation of this Consent Decree identified to EPA, DTSC and the Court.

## XIX.     <u>DISPUTE RESOLUTION</u>

66.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by the United States and/or DTSC to enforce obligations of Performing Settling Defendants that have not been disputed in accordance with this Section.

67.     Any dispute regarding this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

68.   <u>Statements of Position</u>.

a.      In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA and/or DTSC shall be considered binding unless, within 21 days after the conclusion of the informal negotiation period, Performing Settling Defendants invoke the formal dispute resolution procedures of this Section by serving on the United States and/or DTSC a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by Performing Settling Defendants.  The Statement of Position shall specify Performing Settling Defendants' position as to whether formal dispute resolution should proceed under Paragraph 69 (Record Review) or Paragraph 70.

b.      Within 30 days after receipt of Performing Settling Defendants' Statement of Position, EPA and/or DTSC will serve on Performing Settling Defendants its/their Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA and/or DTSC.  EPA's and/or DTSC's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 69 (Record Review) or Paragraph 70.  Within ten days after receipt of EPA's and/or DTSC's Statement of Position, Performing Settling Defendants may submit a Reply. In the event of a dispute between EPA and the Performing Settling Defendants, DTSC shall have the option to submit a Statement of Position, and DTSC's Statement of Position shall be part of the administrative record. In the event of a dispute between DTSC and the Performing Settling Defendants, EPA shall have the option to submit a Statement of Position, and EPA's Statement of Position shall be part of the administrative record.

c.      If there is disagreement between EPA and/or DTSC and Performing Settling Defendants as to whether dispute resolution should proceed under Paragraph 69 (Record Review) or Paragraph 70, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA and/or DTSC to be applicable.  However, if Performing Settling Defendants ultimately appeal to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 69 and 70.

69.    Record Review.  Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph.  For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items related to implementation of the response action requiring approval by EPA and/or DTSC under this Consent Decree, and the adequacy of the performance of response actions taken pursuant to this Consent Decree.  Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendants regarding the validity of the provisions of the ROD or any Consent Decree ROD Amendment.

a.      An administrative record of the dispute shall be maintained by EPA and/or DTSC and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section.  Where appropriate, EPA and/or DTSC may allow submission of supplemental statements of position by the parties to the dispute.

b.      The Director of the Superfund Division, EPA Region IX, and/or a representative of DTSC will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 69(a).

68

This decision shall be binding upon Performing Settling Defendants, subject only to the right to seek judicial review pursuant to Paragraphs 69(c) and 73(d).

c.      Any administrative decision made by EPA and/or DTSC pursuant to Paragraph 69(b) shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Performing Settling Defendants with the Court and served on all Parties within 30 days after receipt of EPA's and/or DTSC's decision.  The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States on behalf of EPA and/or a representative of DTSC may file a response to Performing Settling Defendants' motion.

d.      In proceedings on any dispute governed by this Paragraph, Performing Settling Defendants shall have the burden of demonstrating that the decision of the Superfund Division Director or the representative of DTSC is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's and/or DTSC's decision shall be on the administrative record compiled pursuant to Paragraph 69(a).

70.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law shall be governed by this Paragraph.

a.      Following receipt of a Settling Defendant's Statement of Position submitted pursuant to Paragraph 68(b), the Director of the Superfund Division, EPA Region IX and/or a representative of DTSC will issue a final decision resolving the dispute.  The Superfund Division Director's and/or a representative of DTSC's decision shall be binding on

Performing Settling Defendants unless, within 30 days after receipt of the decision, Performing Settling Defendants file with the Court and serve on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States on behalf of EPA and/or a representative of DTSC may file a response to Performing Settling Defendants' motion.

b.      Notwithstanding Section I (Background) Paragraph N (CERCLA Section 113(j) Record Review of ROD and Work) judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

71.      The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of Performing Settling Defendants under this Consent Decree, not directly in dispute or necessarily affected thereby, unless EPA and/or DTSC or the Court agrees otherwise.  Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that Performing Settling Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XX (Stipulated Penalties).

## XX.   **STIPULATED PENALTIES**

72.      Performing Settling Defendants shall be liable for stipulated penalties in the amounts set forth in Paragraphs 73 and 74 to the United States and DTSC for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVIII (Force Majeure) or Section XIX (Dispute

Resolution).  "Compliance" by Performing Settling Defendants shall include completion of all payments and activities required under this Consent Decree or any plan, report, or other deliverable approved under this Consent Decree, in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans, reports, or other deliverables approved under this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

73.   <u>Stipulated Penalty Amounts - Work (Including Payments and Excluding Plans, Reports, and Other Deliverables)</u>.

a.   The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Paragraph 73(b):

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $1,000 | 1st through 14th day |
| $2,500 | 15th through 30th day |
| $5,000 | 31st day and beyond |

b.   <u>Compliance Milestones</u>.  Failure to submit or perform any of the following within the specified time schedule provided for in this Decree shall incur the stipulated penalties set out in Paragraph 73(a).

1.   Initiation of Construction of Remedial Action for each OU

2.   Completion of Construction of Remedial Action for each OU

3.   Achievement of Operational and Functional Status for each OU

4.   Timely Payment for Past Response Costs, Interim Response Costs and Future Response Costs as required under this Consent Decree

//

74.     <u>Stipulated Penalty Amounts-Plans, Reports, and Other Deliverables</u>
The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate reports or other plans or deliverables pursuant to the Consent Decree.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 750 | 1st through 14th day |
| $1,250 | 15th through 30th day |
| $1,750 | 31st day and beyond |

75.     In the event that EPA assumes performance of a portion or all of the Work pursuant to Paragraph 90 ("Work Takeover"), Performing Settling Defendants shall be liable for a stipulated penalty in the amount of $1,000,000 (One Million Dollars).  Stipulated Penalties under this Paragraph are in addition to the remedies available under Paragraphs 47 (Funding for Work Takeover) and 93(Work Takeover).  The imposition of any such penalty will be subject to the provisions of Section XIX (Dispute Resolution).

76.     Each Contributing Settling Defendant, Ability-To-Pay Settling Defendant and De Minimis Settling Defendant shall be liable for stipulated penalties in the following amounts for each day that it fails to make payments of monies as required by this Consent Decree.

| | |
|---|---|
| Contributing Settling Defendants | $1,000 |
| Ability-To-Pay Settling Defendants | $ 250 |
| De Minimis Settling Defendants | $ 250 |

77.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, whichever is later, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (a) with respect to a deficient submission under Section XI (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after

72

EPA's receipt of such submission until the date that EPA notifies Performing Settling Defendants of any deficiency; (b) with respect to a decision by the Director of the Superfund Division, EPA Region IX, under Paragraph 69 or 70 of Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the date that Performing Settling Defendants' reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIX (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this Consent Decree shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

78.   Following EPA's determination that Performing Settling Defendants have failed to comply with a requirement of this Consent Decree, or DTSC's determination that Performing Settling Defendants have failed to comply with Paragraph 55, EPA, or as appropriate DTSC, will give Performing Settling Defendants written notification of the same and describe the noncompliance. If such noncompliance relates to a deficiency in a submittal, Performing Settling Defendants will have 30 days within which to cure such deficiency. For any other non-compliance, it is within EPA's discretion whether to give the Performing Settling Defendants an opportunity to cure the deficiency prior to a demand for penalties. EPA or DTSC may send Performing Settling Defendants a written demand for the payment of the penalties. Penalties shall accrue as provided in the preceding Paragraph whether or not EPA has notified Performing Settling Defendants of a violation.

79.   All penalties accruing under this Section shall be due and payable to the United States and DTSC within 30 days after Performing Settling Defendants' receipt from EPA, or, as appropriate, DTSC, of a demand for payment of the

penalties, unless Performing Settling Defendants invoke the Dispute Resolution procedures under Section XIX (Dispute Resolution) within the 30-day period.  All payments to the United States under this Section shall indicate that the payment is for stipulated penalties, and shall be made in accordance with Paragraph 55(b) (Instructions for Future Response Costs Payments).  All payments to DTSC under this section shall be made in accordance with Paragraph 55(d).

80.     Penalties shall continue to accrue as provided in Paragraph 77 during any dispute resolution period, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 30 days after the agreement or the receipt of EPA's decision or order;

b.      If the dispute is appealed to this Court and the United States prevails in whole or in part, Performing Settling Defendants shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in Paragraph 80.c.;

c.      If the District Court's decision is appealed by any Party, Performing Settling Defendants shall pay all accrued penalties determined by the District Court to be owed to the United States into an Interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order.  Penalties shall be paid into this account as they continue to accrue, at least every 60 days.  Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Performing Settling Defendants to the extent that they prevail.

81.     If Performing Settling Defendants fail to pay stipulated penalties when due, Performing Settling Defendants shall pay Interest on the unpaid

stipulated penalties as follows: (a) if Performing Settling Defendants have timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of the dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to Paragraph 80 until the date of payment; and (b) if Performing Settling Defendants fail to timely invoke dispute resolution, Interest shall accrue from the date of demand under Paragraph 78 until the date of payment. If Performing Settling Defendants fail to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

82. The payment of penalties and Interest, if any, shall not alter in any way Performing Settling Defendants' obligation to complete the performance of the Work required under this Consent Decree.

83. Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or DTSC to seek any other remedies or sanctions available by virtue of Performing Settling Defendants' violation of this Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, 42 U.S.C. § 9622(l), provided, however, that the United States or DTSC shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided in this Consent Decree, except in the case of a willful violation of the Consent Decree.

84. Notwithstanding any other provision of this Section, the United States or DTSC may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XXI.  COVENANTS BY PLAINTIFFS

85. In consideration of the actions that will be performed and the payments that will be made by Settling Defendants under this Consent Decree, and except as specifically provided in this Paragraph and in Paragraphs 86, 87 (United

States' Pre- and Post-Certification Reservations) and 89 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Sections 106 and 107(a) of CERCLA, 42 U.S.C. §§ 9606 and 9607(a), and DTSC covenants not to sue or take administrative action against Settling Defendants pursuant to Section 107(a) of CERCLA, 42 U.S.C.§ 9607(a) or Health and Safety Code § 25358.3 and 25360, relating to the Site.  These covenants shall take effect for each Ability-to-Pay Settling Defendant, each De Minimis Settling Defendant and, except with respect to future obligations pursuant to this Consent Decree, Performing Settling Defendants, upon receipt by EPA and DTSC from each such Settling Defendant of the payments required by Section XVI (Payments for Past Response Costs) and any Interest or stipulated penalties due thereon under Paragraph 57 (Interest) or Section XX (Stipulated Penalties).  These covenants not to sue shall take effect for each Contributing Settling Defendant upon EPA's and DTSC's receipt of notification, pursuant to Paragraph 6.d., that such Contributing Settling Defendant has discharged its payment obligations pursuant to this Decree.  With respect to future obligations pursuant to this Consent Decree, these covenants shall take effect for Performing Settling Defendants upon Certification of Completion of Remedial Action by EPA pursuant to Paragraph 50(b) of Section XIV (Certificate of Completion).  These covenants are conditioned upon the satisfactory performance by Settling Defendants of their obligations under this Consent Decree.  These covenants extend only to Settling Defendants and do not extend to any other person.

      a.     This covenant not to sue for Ability-to-Pay Settling Defendants is also conditioned upon the veracity and completeness of any financial information previously provided to EPA by Ability-to-Pay Settling Defendants.  If any such financial information is subsequently determined by EPA to be false or, in any material respect, inaccurate, the submitting Ability-to-Pay Settling Defendant shall forfeit all payments made pursuant

to this Consent Decree and this covenant not to sue and the contribution protection shall be null and void. Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from the Ability-to-Pay Settling Defendant's false or materially inaccurate information.

b. Notwithstanding any other provision in this Consent Decree, the United States and DTSC reserve, and this Consent Decree is without prejudice to, the right to institute proceedings against any individual De Minimis Settling Defendant in this action or a new action or to issue an administrative order to any individual De Minimis Settling Defendant seeking to compel that De Minimis Settling Defendant to perform response actions relating to the Site, and/or to reimburse the United States for additional costs of response, if total costs of implementing the Remedial Action in the ROD, or any amendments thereto, are incurred by the United States or any other person in excess of $35,000,000 (Thirty-Five Million Dollars) (exclusive of EPA's oversight costs) from the Effective Date of this Consent Decree until issuance of the Certificate of Completion of the Remedial Action.

86. United States' Pre-Certification Reservations. Subject only to the provisions of Paragraph 13(b) of this Consent Decree, the United States and DTSC reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Performing Settling Defendants to perform further response actions at the Site and/or to pay the United States or DTSC for additional costs of response if, (a) prior to Certification of Completion of the Remedial Action, (1) conditions at the Site, previously unknown to EPA or DTSC, are discovered, or (2) information, previously unknown to EPA or DTSC, is received, in whole or in part, and (b) EPA, after reasonable opportunity for review and

comment by DTSC, determines that these previously unknown conditions or information together with any other relevant information indicates that the Remedial Action is not protective of human health or the environment.

87.   <u>United States' Post-Certification Reservations</u>.  Subject only to the provisions of Paragraph 13(b) of this Consent Decree, the United States and DTSC reserve, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action, and/or to issue an administrative order, seeking to compel Performing Settling Defendants to perform further response actions at the Site and/or to pay the United States and DTSC for additional costs of response if, (a) subsequent to Certification of Completion of the Remedial Action, (1) conditions at the Site, previously unknown to EPA or DTSC, are discovered, or (2) information, previously unknown to EPA and DTSC, is received, in whole or in part, and (b) EPA, after reasonable opportunity for review and comment by DTSC, determines that these previously unknown conditions or this information together with other relevant information indicate that the Remedial Action is not protective of human health or the environment.

88.   For purposes of Paragraph 86 (United States' Pre-Certification Reservations), the information and the conditions known to EPA or DTSC will include only that information and those conditions known to EPA as of the date this Consent Decree is lodged.  For purposes of Paragraph 87 (United States' Post-Certification Reservations), the information and the conditions known to EPA or DTSC shall include only that information and those conditions known to EPA as of the date of Certification of Completion of the Remedial Action and set forth in the ROD, the administrative record supporting the ROD, the post-ROD administrative record, or in any information received by EPA or DTSC pursuant to the requirements of this Consent Decree prior to Certification of Completion of the Remedial Action.

89.     <u>General Reservations of Rights</u>.  The United States and DTSC reserve, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within Plaintiff's covenants.  Notwithstanding any other provision of this Consent Decree, the United States and DTSC reserve all rights against Performing Settling Defendants, and all rights other than those set out in subsection (i), below, against Contributing Settling Defendants and De Minimis Settling Defendants, and all rights other than those set out in subsections (i) and (j), below, against Ability-to-Pay Settling Defendants, with respect to:

        a.      liability for failure by such Settling Defendant to meet a requirement of this Consent Decree;

        b.      liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

        c.      liability based on the ownership of the Site when such ownership commences after signature of this Consent Decree by Settling Defendants;

        d.      liability based on the operation of the Site  when such operation commences after signature of this Consent Decree by Settling Defendants and does not arise  from Settling Defendants' performance of the Work;

        e.      liability based on transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage or disposal of Waste Material at or from the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by Settling Defendants;

        f.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

        g.      criminal liability;

h.      liability for violations of federal or state law which occur during or after implementation of the Work;

i.      liability, prior to Certification of Completion of the Remedial Action, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards, or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to Paragraph 13 (Modifications of SOW or Related Work Plans); and

j.      liability for costs of removal or remedial action involving aquifers underlying the Gaspur Aquifer, including the Exposition Aquifer subject to the provisions of Paragraph 13(b).

90.   <u>Work Takeover</u>.

a.      In the event EPA determines that Performing Settling Defendants have (1) ceased implementation of any portion of the Work, or (2) are seriously or repeatedly deficient or late in their performance of the Work, or (3) are implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Performing Settling Defendants.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Performing Settling Defendants a period of 30 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the 30-day notice period specified in Paragraph 85a., Performing Settling Defendants have not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover").  EPA will notify Performing Settling Defendants in

writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 90.b. Funding of Work Takeover costs is addressed under Paragraph 47.

c.     Performing Settling Defendants may invoke the procedures set forth in Paragraph 69 (Record Review), to dispute EPA's implementation of a Work Takeover under Paragraph 90.  However, notwithstanding Performing Settling Defendants' invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 90 until the earlier of (1) the date that Performing Settling Defendants remedy, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with Paragraph 69 (Record Review) requiring EPA to terminate such Work Takeover.

91.     Notwithstanding any other provision of this Consent Decree, the United States and DTSC retain all authority and reserve all rights to take any and all response actions authorized by law.

## XXII.     COVENANTS BY SETTLING DEFENDANTS

92.     <u>Covenants by Settling Defendants</u>.  Subject to the reservations in Paragraph 94, Settling Defendants covenant not to sue and agree not to assert any claims or causes of action against the United States or DTSC with respect to the Site, and this Consent Decree, including, but not limited to:

a.     any direct or indirect claim for reimbursement from the Hazardous Substance Superfund through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b.     any claims under CERCLA Sections 107 or 113, RCRA Section 7002(a), 42 U.S.C § 6972(a), or state law regarding the Site and this Consent Decree; or

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the California Constitution, the Tucker Act,  28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

93.      Except as provided in Paragraph 96 (Claims Against De Minimis Parties, Ability-to-Pay Parties, and Other Persons That Received Special Notice), and Paragraph 101 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States or DTSC brings a cause of action or issues an order pursuant to any of the reservations in Section XXI (Covenants by Plaintiffs), other than in Paragraphs 89.a (claims for failure to meet a requirement of the Consent Decree), 89.g (criminal liability), and 89.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendants' claims arise from the same response action, response costs, or damages that the United States or DTSC is seeking pursuant to the applicable reservation.

94.      Settling Defendants reserve, and this Consent Decree is without prejudice to, claims against the United States or DTSC, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Performing Settling Defendants' plans, reports, other deliverables or activities.

82

95.     Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

96.     <u>Claims against De Minimis Parties, Ability-to-Pay Parties and Other Persons That Received Special Notice</u>.  Settling Defendants agree not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response costs relating to the Site against any person that has entered or in the future enters into a final settlement based on limited ability to pay with EPA with respect to the Site.  Except as to total costs of implementing the Remedial Action in the ROD, or any amendments thereto, incurred by the United States or any other person in excess of $35,000,000 (Thirty-Five Million Dollars) (exclusive of EPA's oversight costs) from the Effective Date until issuance of the Certificate of Completion of the Remedial Action, Settling Defendants agree not to assert any claims or causes of action and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response costs relating to the Site against any person that has entered or in the future enters into a CERCLA Section 122(g) de minimis settlement with EPA with respect to the Site. For a period of 30 months from the Effective Date of this Consent Decree, Settling Defendants agree not to assert any claims or causes of action and to waive all claims and causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that they may have for response actions relating to the Site against any person not a party to this Consent Decree that received notice under CERCLA Section 122(e)(1), 42 U.S.C § 9622(e)(1), relating to the Cooper Drum Company Superfund Site.  These waivers shall not apply with respect to any defense, claim, or cause of action that a Settling

Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Settling Defendant.

**XXIII.      EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION**

97.      Except as provided in Paragraph 96 (Claims against De Minimis Parties, Ability to Pay Parties, and Persons That Received Special Notice), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  Except as provided in Paragraph 96 (Claims against De Minimis Parties, Ability to Pay Parties, and Persons That Received Special Notice), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113(f)(2)-(3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

98.      The Parties agree, and by entering this Consent Decree this Court finds, that this Consent Decree constitutes a judicially approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C § 9613(f)(2), and that each Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, not to include response actions to be taken and response costs to be incurred in connection with the remediation of aquifers underlying the Gaspur

Aquifer, including the Exposition Aquifer, by the United States or DTSC or any other person; provided, however, that if the United States or DTSC exercises rights under the reservations in Section XXI (Covenants by Plaintiffs) other than Paragraphs 89.a (claims for failure to meet a requirement of the Consent Decree), 89.g (criminal liability), or 89.h (violations of federal law during or after implementation of the Work), the "matters addressed" in this Consent Decree will no longer include those response costs or response actions.

99.    Each Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this Consent Decree, notify the United States and DTSC in writing no later than 60 days prior to the initiation of such suit or claim.

100.    Each Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this Consent Decree, notify in writing the United States and DTSC within ten days after service of the complaint on such Settling Defendant.  In addition, each Settling Defendant shall notify the United States and DTSC within ten days after service or receipt of any Motion for Summary Judgment and within ten days after receipt of any order from a court setting a case for trial.

101.    <u>Res Judicata and Other Defenses</u>.  (a) In any subsequent administrative or judicial proceeding initiated by the United States or DTSC for injunctive relief, recovery of response costs, or other  relief relating to the Site, Settling Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or DTSC in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XXI (Covenants by Plaintiffs); (b) In any subsequent administrative or

judicial proceeding initiated by the United States or DTSC for injunctive relief, recovery of response costs, or other relief relating to aquifers underlying the Gaspur Aquifer, including the Exposition Aquifer, Settling Defendants shall not assert, and may not maintain, any defense based on the contention that such claims should have been brought in the instant case and/or are res judicata or estopped by termination of the Order as provided in Paragraph 121 of this Consent Decree.

## XXIV.      ACCESS TO INFORMATION

102.    Settling Defendants shall provide to EPA and DTSC, upon request, copies of all records, reports, documents and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within their possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Settling Defendants shall also make available to EPA, for purposes of investigation, information gathering, or testimony related to the Site, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

103.    Business Confidential and Privileged Documents.

a.      Settling Defendants may assert business confidentiality claims covering part or all of the Records submitted to Plaintiffs under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Records determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies Records when they are submitted to EPA or DTSC, or if EPA has notified Settling Defendants that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart

B, the public may be given access to such Records without further notice to Settling Defendants.

b.      Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege in lieu of providing Records, they shall provide Plaintiffs with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the contents of the Record; and (6) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and DTSC in redacted form to mask the privileged portion only. Settling Defendants shall retain all Records that they claim to be privileged until the United States, after reasonable opportunity for review and comment by DTSC, has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in the Settling Defendants' favor.

c.      No Records created or generated pursuant to the requirements of this Consent Decree shall be withheld from the United States or DTSC on the grounds that they are privileged or confidential.

104.   No claim of confidentiality or privilege shall be made with respect to any data associated with performance of the Work, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data from the Site.

## XXV.      RETENTION OF RECORDS

105.   Until ten years after Settling Defendants' receipt of EPA's notification pursuant to Paragraph 50(b) (Completion of the Work), each Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in

electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendants who are potentially liable as owners or operators of the Site must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Performing Settling Defendants must also retain, and instruct their contractors and agents to preserve, for the same period of time specified above, all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in their possession or control or which come into their possession or control that relate in any manner to the performance of the Work, provided, however, that  Performing Settling Defendants (and their contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained.  Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

106.   At the conclusion of this record retention period, Settling Defendants shall notify the United States and DTSC at least 30 days prior to the destruction of any such Records, and, upon request by the United States and DTSC, Settling Defendants shall promptly deliver any such Records to EPA or, as appropriate, to DTSC.  Settling Defendants may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Settling Defendants assert such a privilege, they shall provide the Plaintiffs with the following:  (a) the title of the Record; (b) the date of the Record; (c) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege asserted by Settling Defendants.  If a claim of privilege applies only to a portion of a Record, the Record shall be provided to the United States and DTSC in redacted form to mask the privileged

portion only. Settling Defendants shall retain all Records that they claim to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Settling Defendants' favor.  However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

107.   Each Settling Defendant certifies individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since the earlier of notification of potential liability by the United States or DTSC or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA or DTSC requests for information regarding the Site pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927, or §§ 25185 and 25358.1 of the Health and Safety Code.

108.   The Ability-to-Pay Settling Defendants hereby certify that, to the best of their knowledge and belief, after thorough inquiry, they have submitted to EPA financial information that at the time of submittal fairly, accurately, and materially set forth their financial circumstances.  The Ability-to-Pay Settling Defendants also certify  that those circumstances have either not materially changed between the time the financial information was submitted to EPA and the time of Consent Decree execution or, if circumstances have materially changed, their financial position is now worse than it was at the time the financial documents were submitted.

## XXVI.      NOTICES AND SUBMISSIONS

109.   Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified

below, unless those individuals or their successors give notice of a change to the other Parties in writing.  All notices and submissions shall be considered effective upon receipt, unless otherwise provided.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and the Settling Defendants, respectively.  Notices required to be sent to EPA, and not to the United States, under the terms of this Consent Decree, should not be sent to the U.S. Department of Justice:

As to the United States:

       Chief, Environmental Enforcement Section
       Environment and Natural Resources Division
       U.S. Department of Justice
       P.O. Box 7611
       Washington, D.C.  20044-7611
       Re: DJ # 90-11-2-09084

       and

       Superfund Division Director
       United States Environmental Protection Agency
       Region IX
       75 Hawthorne St.
       San Francisco, CA 94105
       Re: Cooper Drum Superfund Site

As to EPA:

       Karen Jurist
       EPA Project Coordinator
       United States Environmental Protection Agency
       Region IX
       75 Hawthorne St.
       San Francisco, CA 94105
       Re:  Cooper Drum Superfund Site

As to the Regional Financial Management Officer:

      David Wood, Chief, Cost Accounting
      United States Environmental Protection Agency
      Region IX
      75 Hawthorne St.
      San Francisco, CA 94105
      Re: Cooper Drum Superfund Site

As to the Performing Settling Defendants:

      Kenny Ogilvie
      CDCPG Project Coordinator
      EHS Support LLC
      110 Kentzel Road
      Pittsburgh, PA 15237
      412-855-3047 (Direct)
      kenny.ogilvie@ehs-support.com

      Daniel E. Vineyard
      CDCPG Common Counsel
      Jackson Walker L.L.P.
      1401 McKinney, Suite 1900
      Houston, TX 77010
      713-752-4277
      dvineyard@jw.com

As to DTSC:

      Lori Parnass
      Hazardous Substances Scientist
      Brownfields and Environmental Reuse Program
      Department of Toxic Substances Control
      9211 Oak Dale Avenue
      Chatsworth, CA 91311
      Phone:  (818) 717-6597
      Lori.Parnass@dtsc.ca.gov

As to Contributing Settling Defendants, Ability-To-Pay Settling Defendants and De Minimis Settling Defendants:  See names and addresses on Appendices F, G and H to this Consent Decree

## XXVII.    RETENTION OF JURISDICTION

110.   This Court retains jurisdiction over both the subject matter of this Consent Decree and Settling Defendants for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIX (Dispute Resolution).

## XXVIII.    APPENDICES

111.   The following appendices are incorporated into this Consent Decree:

"Appendix A" is the ROD.

"Appendix B" is the description of the Site.

"Appendix C" is the SOW.

"Appendix D" is collectively the two Remedial Design Reports completed by EPA.

"Appendix E" is the list of all Settling Defendants.

"Appendix F" is the list of the Ability-to-Pay Settling Defendants and the amounts they are to pay to the United States pursuant to this Consent Decree.

"Appendix G" is the list of De Minimis Settling Defendants and the amounts they are to pay to the United States pursuant to this Consent Decree.

"Appendix H" is the list of Contributing Settling Defendants and the amounts they are to pay to the Performing Settling Defendants pursuant to this Consent Decree.

"Appendix I" is the list of Performing Settling Defendants.

"Appendix J" is the form of Performance Guarantee selected by the Performing Settling Defendants and approved by the United States.

## XXIX.    **COMMUNITY INVOLVEMENT**

112.    If requested by EPA, Performing Settling Defendants shall participate in community involvement activities pursuant to the Community Involvement Plan developed by EPA.  Performing Settling Defendants shall reasonably cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Performing Settling Defendants shall participate in the preparation of such information for dissemination to the public and in public meetings that may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXX.    **MODIFICATION**

113.    Except as provided in Paragraph 13 (Modification of SOW or Related Work Plans), material modifications to this Consent Decree, including the SOW, shall be in writing, signed by the United States, DTSC and Settling Defendants, and shall be effective upon approval by the Court.  Except as provided in Paragraph 13, non-material modifications to this Consent Decree, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States, and Settling Defendants. All modifications of the Consent Decree, other than the SOW, shall also be signed by DTSC.  A modification to the SOW shall be considered material if it implements a Consent Decree ROD Amendment that fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. 300.435(c)(2)(ii).  Before providing its approval to any modification to the SOW, the United States will provide DTSC with a reasonable opportunity to review and comment on the proposed modification.

114.    Any modification that does not affect the obligations of or the protections afforded to Ability-to-Pay Settling Defendants, Contributing Settling Defendants or De Minimis Settling Defendants may be executed without the

signatures of Ability-to-Pay Settling Defendants, Contributing Settling Defendants or De Minimis Settling Defendants.

115.    Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

**XXXI.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT**

116.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States and DTSC reserve the right to withdraw or withhold their consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendants consent to the entry of this Consent Decree without further notice.

117.    If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

**XXXII.    SIGNATORIES/SERVICE**

118.    Each undersigned representative of a Settling Defendant and DTSC to this Consent Decree and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

119.    Each Settling Defendant agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States or DTSC has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

120.   Each Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.  Settling Defendants need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIII.   **TERMINATION OF ORDER**

121.   Upon entry of this Consent Decree, Unilateral Order 2009-07 is terminated as to such Settling Defendants.

## XXXIV.   **FINAL JUDGMENT**

122.   This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

//       //
//       //
//       //
//       //
//       //
//       //
//       //
//       //
//       //
//       //

123.   <u>Upon approval and entry of this Consent Decree by the Court, this</u> Consent Decree shall constitute a final judgment between and among the United States, DTSC and Settling Defendants.  The Court enters this judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58.

SO ORDERED THIS <u>20TH</u> DAY OF <u>April</u>, 20<u>16</u>.

____ _____ ___

United States District Judge

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2  United States, et al. v. AC Products, Inc., et al.:

3

4  FOR PLAINTIFF UNITED STATES OF AMERICA

5

6

7  DATE: _Nov 24, 2015_

8  CHERYL ANN LUKE
   Trial Attorney
9  Environmental Enforcement Section
   Environmental & Natural Resources
10      Division
   United States Department of Justice
11 P.O. Box 7611
   Washington, D.C. 20044-7611
12 Telephone: (202) 514-5466
   Fax: (202) 616-2427
13 Email: cheryl.luke@usdoj.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

97

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2   <u>United States, et al. v. AC Products, Inc., et al.</u>:

3

4   FOR PLAINTIFF UNITED STATES OF AMERICA

5

6

7   DATE: *12/1/15*

                                             ENRIQUE MANZANILLA

8                                        DIRECTOR, SUPERFUND DIVISION

9                                       (US EPA Region 9)

10

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2  United States, et al. v. AC Products, Inc., et al.:

3

4  FOR PLAINTIFF STATE OF CALIFORNIA DEPARTMENT OF TOXIC

5  SUBSTANCES CONTROL

6

7

8  DATE:  8/14/2015

9                                    Sayareh Amirebrahimi
10                                   Branch Chief, Brownsfields and
                                     Environmental Restoration Program
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2  United States, et al. v. AC Products, Inc., et al.:

3

4  FOR SETTLING DEFENDANT **AC Products, Inc.**

5

6

7  DATE: 8 | 18 | 15

8  Name (print): Robert T HRAUB

9  Title:   Vice President

10

11

12  Agent Authorized to Accept   Quaker Chem. Corp. -
13  Service on Behalf of   CSC-Lawyers Incorporating Service
   Above-signed Party:   2710 Gateway Oaks Drive, Suite 150N
14  Sacramento, CA 95833

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **A.G. Layne, Inc., a California corporation, and its officers, directors, shareholders and corporate successors**

DATE: _8/13/2015_         _[signature]_
                          Name (print): Michael D. Lee
                          Title:          President

Agent Authorized to Accept       Name:   Michael D. Lee
Service on Behalf of
Above-signed Party:              Address: 4578 Brazil Street

                                          Los Angeles, CA 90039

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Alpha Corporation of Tennessee Inc.**

DATE: 9-17-2015         Frank Sizemore

                        Name (print): Frank Sizemore

                        Title: Director of Regulatory Affairs

Agent Authorized to Accept         CT Corporation System
Service on Behalf of               818 W. Seventh Street
Above-signed Party:                Los Angeles, CA 90017

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2   <u>United States, et al. v. AC Products, Inc., et al.</u>:

3

4   FOR SETTLING DEFENDANT **Ashland Inc.**

5

6

7   DATE: _9/9/15_

8                  Name (print): _RICHMOND L. WILLIAMS_

9                  Title: _Chief Counsel Environmental Lit._

10

11

12   Agent Authorized to Accept     CT Corporation System

13   Service on Behalf of          818 West Seventh Street

14   Above-signed Party:          Los Angeles, CA 90017

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Atlantic Richfield Company**

DATE: aug 25, 2015

Name (print): LISA A SMITH

Title: VICE PRESIDENT

Agent Authorized to Accept Service on Behalf of Above-signed Party:

CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

104

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2  United States, et al. v. AC Products, Inc., et al.:

3

4  FOR SETTLING DEFENDANT **Baker Petrolite LLC**

5

6

7  DATE: 21 October 2015 _____

8  Name (print): DINA C. KUYKENDALL

9  Title: DIRECTOR OF ENVIRONMENTAL

10                                    AFFAIRS

11

12  Agent Authorized to Accept       CT Corporation System
13  Service on Behalf of             818 West Seventh Street
14  Above-signed Party:              Los Angeles, CA 90017

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2 | United States, et al. v. AC Products, Inc., et al.:

3

4 | FOR SETTLING DEFENDANT **Cargill, Incorporated**

5

6

7 | DATE: Aug 26, 2015     _Anne Monine_

8 |      Name (print): Anne Monine

9 |      Title: Corporate Environmental Lead

10 |          CEHS, Cargill Inc.

11

12 | Agent Authorized to Accept     CT Corporation System

13 | Service on Behalf of          818 West Seventh Street

    Above-signed Party:        Los Angeles, CA 90017

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Castrol Industrial North America Inc.**

DATE: aug 25, 2015     _____

Name (print): LISA A SMITH

Title: VICE PRESIDENT

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

107

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2   United States, et al. v. AC Products, Inc., et al.:

3

4   FOR SETTLING DEFENDANT **Chemical Waste Management, Inc.**

5

6

7   DATE: _9/15/15_        _____

8                       Name (print): _Steven Richtel_

9                       Title: _Area Director_

10

11

12   Agent Authorized to Accept     CT Corporation System

13   Service on Behalf of           818 West Seventh Street

    Above-signed Party:          Los Angeles, CA 90017

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Chevron U.S.A. Inc.**

DATE:  9|28|2015                    _____

Name (print):  Michael W. Woody

Title:    Assistant Secretary

Agent Authorized to Accept          The Prentice-Hall Corporation System, Inc.
Service on Behalf of                2710 Gateway Oaks Drive, Suite 150N
Above-signed Party:                 Sacramento, CA 95833

109

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2  United States, et al. v. AC Products, Inc., et al.:

3

4  FOR SETTLING DEFENDANT **Coral Chemical Company**

5

6

7  DATE: *31 AUG 2015*

8  Name (print): *JOHN E. SCHUENEMAN*

9  Title: *PRESIDENT/CEO, CORAL*

10

11

12  Agent Authorized to Accept          CT Corporation System
13  Service on Behalf of                818 West Seventh Street
    Above-signed Party:                 Los Angeles, CA 90017
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Houghton International, Inc., as successor to**

**D.A. Stuart Company**


DATE: _____        _____

                         Name (print): PETER M. MACALUSO

                         Title:   SVP


Agent Authorized to Accept      Name:_____
Service on Behalf of
Above-signed Party:             Address:_____

                                _____

                                _____

111

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Dunn-Edwards Corporation**

DATE: _9-10-15_

Name (print): _Robert Hill_

Title: _EVP/CFO_

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

Nicholas W. van Aelstyn
Beveridge & Diamond, PC
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2   United States, et al. v. AC Products, Inc., et al.:

3

4   FOR SETTLING DEFENDANT **ExxonMobil Oil Corporation**

5

6

7   DATE: 10/21/2015

8   Name (print): ANDREW HAWORTH

9   Title: US PROJECT EXECUTION

10   MANAGER

11

12   Agent Authorized to Accept          CSC-Lawyers Incorporating Service
13   Service on Behalf of                2710 Gateway Oaks Drive, Suite 150N
     Above-signed Party:                 Sacramento, CA 95833
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

113

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Gallade Chemical, Inc. (formerly known as and doing business as Orange County Chemical)**

DATE: _10/13/15_

_Richard D Gallade_

Name (print): RICHARD A. GALLADE

Title: PRESIDENT

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

Richard A. Gallade
Gallade Chemical, Inc.
1230 E. St. Gertrude Place
Santa Ana, CA 92707

114

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Hasco Oil Company, Inc.**

DATE: 10-15-2015

Renee L Bjorkl

Name (print): Rence Bjorklund

Title: President

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

Steven Fingal
2301 Dupont Street, Suite 350
Irvine, CA 92612

115

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Houghton International, Inc.**

DATE: 11.10.15

Name (print): PETER M. MARCUSO

Title: SVP

Agent Authorized to Accept        National Registered Agents, Inc.
Service on Behalf of              818 W. Seventh Street
Above-signed Party:               Los Angeles, CA 90017

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2  United States, et al. v. AC Products, Inc., et al.:

3

4  FOR SETTLING DEFENDANT **J.H. Mitchell & Sons Distributors, Inc., a**

5  **California Corporation, and its officers, directors, shareholders and corporate**

6  **successors**

7

8

9  DATE:  August 21, 2015

   Name (print) Sherman Mitchell:

10

11  Title: Sec. Treas.

12

13

14  Agent Authorized to Accept          Sherman Mitchell

15  Service on Behalf of                 14515 Joanbridge Street
    Above-signed Party:                  Baldwin Park, CA 91706

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Lockheed Martin Corporation, including all officers, directors, shareholders, and corporate successors**

DATE: 11/23/15

Carol B. Cala

VP, Energy, Environment, Safety & Health

Enterprise Business Services

Lockheed Martin Corporation

Agent Authorized to Accept Service on Behalf of Above-signed Party:

CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

118

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Lonza Inc.**

DATE: 9/10/15

Name (print): Dan Bennewitz

Title: Corporate Head, EHS

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

National Corporate Research
523 W. 6th Street, Suite 544
Los Angeles, CA 90014

1 | THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of
2 | United States, et al. v. AC Products, Inc., et al.:

3

4 | FOR SETTLING DEFENDANT **Lubricating Specialties Company**

5

6

7 | DATE: 31 August 2015

8 | Name (print): SYDNEY THWAITES

9 | Title: PRESIDENT & CEO

10

11

12 | Agent Authorized to Accept      Stephen Milam
13 | Service on Behalf of            8014 Paramount Blvd.
    | Above-signed Party:            Pico Rivera, CA 90660-4888
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Mathisen Oil Co. Inc. a California corporation, and its officers, directors, shareholders and corporate successors**

DATE: ____8-24-2015_____          _James Mathisen_

Name (print): JAMES MATHISEN

Title: PRESIDENT

Agent Authorized to Accept          James Mathisen
Service on Behalf of                10911 Jasmine street
Above-signed Party:                 Fontana, ca 92337

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Pennzoil-Quaker State Company (for itself and for Penreco)**

DATE: 8th September 2015 _____

J.M. Elt____

Name (print): JONATHAN ELTON

Title: GENERAL MANAGER

Agent Authorized to Accept       CT Corporation System
Service on Behalf of             818 West Seventh Street
Above-signed Party:              Los Angeles, CA 91101

122

1 | THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2 | United States, et al. v. AC Products, Inc., et al.:

3

4 | FOR SETTLING DEFENDANT **PolyOne Corporation**

5

6

7 | DATE: 14 SEP 2015 _____

8 | Name (print): M. John Midea, Jr.

9 | Title: Senior Vice President, Global

10 | Operations and Process Improvement

11

12 | Agent Authorized to Accept          CT Corporation System
13 | Service on Behalf of                818 West Seventh St., Ste 930
14 | Above-signed Party:                 Los Angeles, CA 90017

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **PPG Industries, Inc.**

DATE: 9/18/15

Name (print): Jane Valenta

Title: V.P. EHS

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

The Prentice-Hall Corporation System, Inc.
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

124

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **PTM&W Industries Inc.**

DATE: Sept. 14, 2015

Name (print): CHARLES E. OWEN

Title: PRESIDENT

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

Charles E. Owen
10640 S. Painter Avenue
Santa Fe Springs, CA 90670

125

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of
United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Quaker Chemical Corporation**

DATE: 8/18/15

Name (print): Robert T. TRAUB

Title: General Counsel

Agent Authorized to Accept        CSC-Lawyers Incorporating Service
Service on Behalf of              2710 Gateway Oaks Drive, Suite 150N
Above-signed Party:               Sacramento, CA 95833

126

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of
United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Rathon Corp., including all officers, directors and corporate successors**

DATE: 11-2-2015 _____

Name (print): E. Lee Reichert

Title: Secretary

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

Name: Incorporating Services, Ltd.

Address: 720 14th Street

Sacramento, California 95814

_____

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2   United States, et al. v. AC Products, Inc., et al.:

3

4   FOR SETTLING DEFENDANT **Shell Chemical LP**

5

6

7   DATE: 8 SEPT 2015

8   Name (print): NATHAN JEPPSON

9   Title: PRESIDENT

10

11

12   Agent Authorized to Accept        CT Corporation System
    Service on Behalf of              818 West Seventh Street
13   Above-signed Party:               Los Angeles, CA 90017

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2  United States, et al. v. AC Products, Inc., et al.:

3

4  FOR SETTLING DEFENDANT **Shell Oil Company**

5

6

7  DATE: 8ᵀᴴ SEPTEMBER 2015 _____ J.M. Oh

8  Name (print):  JONATHAN ELTON

9  Title:  GENERAL MANAGER

10

11

12  Agent Authorized to Accept       CT Corporation System

13  Service on Behalf of             818 West Seventh Street

14  Above-signed Party:              Los Angeles, CA 90017

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of
United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **SOCO West, Inc.**


DATE: 9/30/15

Name (print): RAJ MEHTA
Title: Pres


Agent Authorized to Accept    Thomas C. Sanford
Service on Behalf of          170 S. Euclid Avenue
Above-signed Party:           Pasadena, CA 91101

130

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of
United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Southern California Edison**

DATE: 11/19/15

Name (print): DONALD NEAL

Title: DIRECTOR, CORP. ENVIRONMENTAL SERVICES

Agent Authorized to Accept       Cristina E. Limon
Service on Behalf of             2244 Walnut Grove Avenue
Above-signed Party:              Rosemead, CA 91770

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Southern Counties Oil Co., a California Corporation, and Southern Counties Oil Co., a California Limited Partnership**

DATE: 9/1/15

Name: Robert W. Bollar

Title: Corporate Secretary

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

Robert Bollar
SC Fuels Legal Department
1800 West Katella Avenue, Suite 400
Orange, CA 92867

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States, et al. v. AC Products, Inc., et al.</u>:

FOR SETTLING DEFENDANT **Sta-Lube LLC, formerly Sta-Lube, Inc. (originally and incorrectly identified in the UAO as CRC Industries, Inc.)**

DATE:  14 August 2015

*Scott Grey*

Name (print): Scott Grey

Title:        CEO

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name: Corporation Service Company

Address:
        d/b/a CSC-Lawyers Incorporating Service
        2710 Gateway Oaks Drive
        Suite 150N
        Sacramento, CA 95833-3505

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Stuarts' Petroleum, a California Corporation, and its officers, directors, shareholders and corporate successors**

DATE: 8-20-15

Name (print): John A Stuart

Title: President

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

John A. Stuart
11 E 4th Street
Bakersfield, CA 93307

134

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Texaco Downstream Properties Inc.**

DATE: 28 Sept 2015

Name (print): Frank G. Soler

Title:   Vice President and Secretary

Agent Authorized to Accept     The Prentice-Hall Corporation System, Inc.
Service on Behalf of           2710 Gateway Oaks Drive, Suite 150N
Above-signed Party:            Sacramento, CA 95833

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **The Boeing Company**

DATE: 9/27/2015

Name (print): J. STEVEN ROGERS

Title: CHIEF COUNSEL, EHS
THE BOEING COMPANY

Agent Authorized to Accept
Service on Behalf of
Above-signed Party:

CSC-Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **The Valspar Corporation and its wholly owned subsidiary, Engineered Polymer Solutions, Inc.**

DATE:   8/28/2015

Name (print): Rolf Engh

Title:  Executive Vice President, General Counsel
and Secretary

Agent Authorized to Accept   CT Corporation System
Service on Behalf of          818 W. Seventh Street
Above-signed Party:           Los Angeles, CA 90017

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States, et al. v. AC Products, Inc., et al.:

FOR SETTLING DEFENDANT **Union Oil Company of California**

DATE: 9/28/15

Name (print): Grace Nerona

Title: Assistant Secretary

Agent Authorized to Accept Service on Behalf of Above-signed Party:

The Prentice-Hall Corporation System, Inc.
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

138

1   THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of

2   United States, et al. v. AC Products, Inc., et al.:

3

4   FOR SETTLING DEFENDANT **Univar USA Inc. on behalf of itself and**

5   **Chemcentral Corp.**

6

7

8   DATE:   8/20/15

9   Name (print):   MICHELLE ULICK ROSENTHAL

10   Title:   OUTSIDE COUNSEL TO UNIVAR USA INC.

11

12

13   Agent Authorized to Accept          CSC-Lawyers Incorporating Service

14   Service on Behalf of                     2730 Gateway Oaks Drive, Suite 100

     Above-signed Party:                      Sacramento, CA 95833

15

16

17

18

19

20

21

22

23

24

25

26

27

28